**Affirmed and Opinion Filed July 23, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01547-CV

**SUBODH NAIK, Appellant**
**V.**
**SUHAS NAIK, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-11-408**

## OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Bridges

Subodh Naik (Subodh) appeals the trial court's judgment in favor of Suhas Naik (Suhas) in this suit to recover the balance due on a note. In four issues, Subodh contends the trial court erred by (1) entering judgment against him personally based on a nonrecourse note, (2) finding the parties agreed to modify the note to remove the restriction regarding personal liability, (3) entering judgment based on a claim that had been released, and (4) denying his request for attorney's fees. We affirm the trial court's judgment.

## Background

Subodh and his nephews, Suhas and Nilesh Saik, were partners in the Strandian Partnership, which owned the Windjammer Apartments. In 1998, Subodh agreed to purchase Suhas's and Nilesh's partnership interests. Using a "template," Subodh drafted a Transfer and

Sale of Partnership Interest and a Promissory Note and forwarded the documents to an attorney for comment.[1] Subodh incorporated some of the attorney's suggested changes into the documents, and the parties signed the documents on June 18, 1998.

Subodh agreed to pay $225,000 for Suhas's and Nilesh's partnership interests. At the time the transaction closed, Subodh wrote two checks for $37,500, one to Suhas and one to Nilesh. Subodh and his wife, Hema Saik, signed a promissory note for the $150,000 balance owed on the purchase price (the Note). Section 2 of the Note stated:

> RESPONSIBILITY. There is no personal or corporate liability for the repayment of this loan. Lender shall only have recourse to the extent of the value of the Interest in the event of non payment when the Note is due.

Interest accrued on the loan balance "at the rate of 8.0% per year" until the Note was fully paid. Subodh was required to pay the balance due on the Note when the Windjammer Apartments were sold or refinanced. However, if Subodh did not refinance the Windjammer Apartments before June 18, 1999, he was required to pay the balance "in monthly installments amortized at 8% over 15 years, with first payment due 7/18/99."

In 1999, Subodh, Suhas, Jim DePetris, and Sidney Goldstein formed a partnership, the Santa Fe Lofts IV L.P., to purchase and develop the Santa Fe Building in downtown Dallas (the Santa Fe project). Subodh refinanced the Windjammer Apartments in July 1999. From the funds he obtained through the refinancing, Subodh paid Suhas an additional $75,000 on the Note and invested in the Sante Fe project. The only payment Subodh made on the Note after July 1999 was a payment for $17,000 in February 2001. Although Suhas testified he credited this payment to the Note, Subodh testified the money was a loan to help Suhas and Nilesh purchase a house.

---

[1] There was conflicting evidence at trial about whether the attorney represented only Suhas or represented all parties to the transaction.

In August 2000, Goldstein withdrew as a partner in the Santa Fe project, and Ajay Kothari joined the partnership. At that time, the ownership interests in Santa Fe Lofts IV were the general partner, Loft Properties, Inc., with 1%, Subodh with 39.5%, Suhas with 24.5%, Kothari with 25%, and DePetris with 10%. In 2001, DePetris was having financial difficulties and wanted to withdraw from the partnership. According to Suhas, he told Subodh that he did not want to purchase DePetris's interest, but Subodh insisted the partners purchase DePetris's interest. Suhas and Kothari were forced to borrow money to finance their share of the purchase. After DePetris left the Santa Fe project, the partnership interests were Loft Properties with 1%, Subodh with 42.83%, Suhas with 27.84%, and Kothari with 28.33%.

On the Santa Fe project's 2001 tax return, the partnership interests were listed as Loft Properties with 1%, Subodh with 39.5%, Suhas with 29.5%, and Kothari with 30%. According to Suhas, the partnership interests were changed to compensate him and Kothari for the additional burden of borrowing money to purchase DePetris's interest. Suhas testified that Subodh agreed with the change at the time it was made. Subodh testified he first learned of the change in the partnership interests when he saw the partnership's tax return in September of 2002. According to Subodh, he questioned Suhas about the change and was told it was to pay the balance due on the Note. Subodh could not explain why Kothari's partnership interest was adjusted based on the payment of the Note and admitted that Nilesh was not a participant in the Santa Fe project.

Subodh sold the Windjammer Apartments in 2003, but did not pay the balance of the Note. According to Suhas, he repeatedly requested that Subodh pay the Note, but Subodh indicated he did not have the funds to do so. Suhas testified he and Subodh agreed that Subodh would pay the balance on the Note when he received funds from the Santa Fe project. Under questioning at trial from Subodh's attorney, Suhas affirmed that he agreed he "would wait until

[Subodh] got his money out of the Santa Fe project before getting paid the rest of" the Note. Suhas also affirmed that, because Subodh "had no funds," he agreed that his recovery from the Note "would be based upon [Subodh's] recovery from the Santa Fe partnership." Subodh denied that he had any discussions with Suhas about payment on the Note not being due until he received funds from the Santa Fe project.

At some point, Hamilton Properties Corporation became involved in the Santa Fe project and the decision was made to develop the building as a hotel. Subodh decided he no longer wanted to be a part of the Santa Fe project and requested that Suhas and Kothari purchase his interest for two million dollars. Suhas and Kothari were willing to pay approximately one million dollars for the interest. The parties agreed to mediate the dispute.

Approximately fifteen days before the mediation, Suhas sent an email to Subodh requesting confirmation that the outstanding balance on the Note was $75,000, the interest rate on the Note was eight percent, and one payment of $15,000 had been made in 2001. Suhas indicated that he "expect[ed] this to be paid whenever Santa Fe closes. 7/8 years should be fair? Hopefully this doesn't become part of mediation." Subodh responded "the amount is $17,000" and that he would "sort ot [sic] this & others within ten days of the closing." Subodh testified at trial that he meant in his email that "[a]t the mediation you would come up with a figure. And when I got the money, that's when I would pay it." Suhas responded by email that he would "prefer this to be part of the closing statement as I'm borrowing against the WJ note, so lets [sic] sort out now." Suhas then listed a number of other items for which he was seeking repayment from Subodh. Subodh testified he did not claim during the email exchange that the Note had already been paid because he did not want to "muddle" anything prior to the mediation.

The parties mediated the dispute on October 5, 2007. Subodh testified he thought "everything was on the table" at the mediation. He gave the mediator the email exchange he had

with Suhas and raised the issue of the Note with the mediator. He admitted, however, that no demands or offers were made to settle the Note during the mediation. Pursuant to the settlement signed at the mediation, Suhas, Kothari, and the Santa Fe Lofts IV were required to pay Subodh $1,515,000 at the time of the construction loan closing. Subodh would also receive a total of $420,000 from the development fee for the Santa Fe project through monthly payments during construction. Finally, Hamilton agreed to pay Subodh $65,000. Under the settlement agreement, Suhas was to receive a total of two million dollars for his partnership interest. The Santa Fe project construction loan closed in April 2008. Subodh received the payments set out in the settlement agreement.

Subodh and Suhas were partners, along with another individual, in a piece of land identified as the I-30 project. In 2009, Subodh requested that Suhas and the other partner reimburse him for some expenses incurred on the I-30 project. Suhas requested that Subodh pay the balance due on the Note with an offset for the portion of expenses on the I-30 project that Suhas owed Subodh. Subodh responded the Note had been resolved at mediation by the payment to Suhas of $65,000 through the settlement agreement. Suhas denied he had been paid any money through the mediated settlement agreement and filed this suit to collect on the Note. Subodh filed a counterclaim for attorney's fees asserting the Note had been resolved by the mediation and Suhas breached the settlement agreement by bringing this suit.

The case was tried to the bench. The trial court rendered judgment that Subodh was personally liable on the Note and awarded Suhas $131,493 for the balance due on the Note, $12,000 for attorney's fees through trial, and contingent attorney's fees on appeal. Subodh filed a request for findings of fact and conclusions of law. The trial court found, as pertinent to this appeal:

12.     After Subodh sold the Windjammer Apartments, Subodh and Suhas modified the Note by agreement to allow Suhas to be paid from proceeds Subodh would realize from the Santa Fe project.

14.     The adjustment to Subodh's partnership interest in the Santa Fe project was not for payment to Suhas of the balance owed on the Note.

17.     At the mediation, it was agreed that Subodh would ultimately be bought out of the Santa Fe project for a sum that totaled the $2,000,000 he had requested.

18.     No money was deducted from the price of Subodh's partnership interest to pay Suhas for the balance due on the Note.

19.     The settlement agreement did not mention the Note and there was not a mediation relating to this lawsuit.

22.     In addition to the agreed modification of the Note, the Note itself provided an additional basis for Subodh's personal liability.

23.     The language in the Note can be considered to be ambiguous concerning whether it prohibits personal liability completely or allows personal liability, but limits it at the value of the property interest.

24.     Because Subodh drafted the Note, the ambiguity would be construed against him, creating a limited personal liability on the part of Subodh not to exceed the value of the interest, which was $225,000 on the date the Note was executed.

The trial court concluded, as pertinent to this appeal:

6.     The increase in Suhas's partnership interest in the Santa Fe project was not related to the Note.

7.     The settlement did not release or resolve the claims relating to the Note.

8.     The settlement agreement did not encompass the Note.

9.     Suhas was entitled to recover personally from Subodh "based on the ambiguous and limiting language in the Note and/or based on the agreed modifications of the Note, to allow for payment to [Suhas] out of [Subodh's] proceeds from Santa Fe."

Subodh filed a motion for new trial on grounds the Note was a nonrecourse note and the Note was released in the settlement agreement. After a hearing, the trial court denied the motion for new trial. It also made supplemental findings of fact that included, after the Windjammer Apartments were sold, the parties agreed to modify the Note to provide for a different source of

payment and to remove the restriction regarding personal liability or recourse; Subodh's counsel stipulated during trial that the modification of the Note included a modification that removed the restrictions on personal liability or recourse; the Note was not discussed during the mediation; and prior to the mediation, Subodh told Suhas that they would sort out the balance on the Note within ten days of a closing that would occur after the mediation, indicating neither party intended the mediation to cover the Note. The trial court made supplemental conclusions of law that the parties modified the Note to remove restrictions regarding recourse and personal liability, there was no consideration paid to Suhas as a result of the mediation for any release of the Note, and the mediation did not settle or release the Note.

### Personal Liability on the Note

In his first and second issues, Subodh asserts the trial court erred by finding he was personally liable on the Note. The trial court found that Subodh was personally liable on the Note because (1) the language of the Note was ambiguous and, construed against Subodh as the drafter, provided for personal liability to the extent of the value of the interest; (2) the parties agreed to modify the Note to provide for a different source of payment and to remove the restriction on personal liability; and (3) Subodh's counsel stipulated during trial that the modification of the Note removed the restrictions on personal liability. On appeal, Subodh challenges all three bases of personal liability found by the trial court.

In his second issue, Subodh contends there is no evidence to support the trial court's finding the parties agreed to modify the Note to remove the restriction regarding personal liability. Findings of fact in a case tried to the court have the same force and effect as jury findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.). We review those fact findings under the same sufficiency standards we use when determining if sufficient evidence

–7–

exists to support an answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454 (Tex. App.—Dallas 2012, pet. denied). When a party challenges the legal sufficiency of the evidence to support an adverse finding on an issue on which he did not have the burden of proof at trial, the party must demonstrate there is no evidence to support the adverse finding. *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Id.*; *see also Kroger Tex., Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Suberu*, 216 S.W.3d at 793 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

In reviewing the legal sufficiency of the evidence, we view the evidence in a light most favorable to a finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The trial court, as the fact finder in a bench trial, is the sole judge of the credibility of the witnesses. *Id.* at 819; *Wright Grp. Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.).[2]

Whether a contract is modified depends on the parties' intentions and is a question of fact. *Arthur J. Galagher & Co. v. Dieterich*, 270 S.W.3d 695, 701 (Tex. App.—Dallas 2008, no pet.). The party asserting a modification to a contract has the burden of proof. *Intec Sys., Inc. v.*

---

[2] Subodh states in his brief that his second issue "involves legal and factual sufficiency challenges" and that the "standard of review is met when, as is the case in the present appeal, there is a complete absence of evidence of a vital fact." The subtitle of the section of his brief addressing this issue is "There Was No Evidence of an Agreement to Modify the Note to Provide for Personal Liability" and his substantive argument is only that there was no evidence to support the trial court's finding the parties agreed that Subodh would be personally liable on the Note. Therefore, to the extent Subodh has attempted to raise an issue regarding the factual sufficiency of the evidence to support the trial court's finding, we conclude it is inadequately briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i) (appellate brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record); *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied) ("Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint.").

*Lowrey*, 230 S.W.3d 913, 918 (Tex. App.—Dallas 2007, no pet.). A valid contract modification must include a meeting of the minds supported by consideration. *White v. Harrison*, 390 S.W.3d 666, 674 (Tex. App.—Dallas 2012, no pet.). In determining whether the parties had a meeting of the minds concerning a modification of a contract, the focus is on what the parties did and said, not their subjective states of mind. *Arthur J. Galagher & Co.*, 270 S.W.3d at 702.

Here, although the Note required Subodh to pay the outstanding balance when he sold the Windjammer Apartments, he failed to do so. Suhas testified he requested payment on the Note, but Subodh indicated he did not have the funds. According to Suhas, he and Subodh agreed that payment on the Note would be deferred until Subodh received funds from the Santa Fe project. Prior to the mediation, Subodh stated in an email to Suhas that he preferred to "sort out" the Note after the closing on the Santa Fe project. Subodh testified he meant that he would settle the issue "as soon as [he] got some cash." He thought the parties would "come up with a figure" at the mediation and when he "got the money, that's when [he] would pay it." We conclude there is more than a scintilla of evidence that Subodh agreed to a modification of the Note that required him to personally pay the balance due on the Note when he received funds from the closing on the Santa Fe project.[3] Accordingly, Subodh's no-evidence challenge fails, and we resolve his second issue against him.

Because we have concluded there is legally sufficient evidence to support the trial court's finding that Subodh and Suhas agreed to modify the Note to require payment by Subodh, personally, after he received funds from the Santa Fe project, we need not address Subodh's first

---

[3] In his second issue, Subodh also challenges the trial court's finding that his counsel stipulated at trial that the parties agreed to modify the Note to allow for personal liability. During trial, in response to questioning from the trial court, Subodh's counsel represented to the trial court that the parties had an "oral agreement after the note." Subodh's counsel further agreed with the trial court's statements that "[the oral agreement] had no restriction or recourse one way or the other" and that "essentially this issue on personal liability and nonrecourse has been changed by an oral agreement." *See Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998) (stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys" respecting some matter incident to proceeding). In his appellate brief, Subodh argues his counsel stipulated only that the parties modified the nonrecourse provision concerning the source of the recovery. Because there is legally sufficient evidence to support the trial court's finding without considering the stipulation made by Subodh's counsel, we need not address the extent of counsel's stipulations. *See* TEX. R. APP. P. 47.1.

issue challenging the trial court's findings that the Note was ambiguous, must be construed against Subodh, and allowed for limited personal liability. *See* TEX. R. APP. P. 47.1; *Ginther v. Taub*, 675 S.W.2d 724, 725 (Tex. 1984) (declining to address challenges to trial court's finding providing alternative basis for judgment); *Moody Nat'l Buffalo Speedway MT, L.P. v. Sirius Solutions, LLLP*, No. 01-12-00047-CV, 2013 WL 3155932, at *6 (Tex. App.—Houston [1st Dist.] June 20, 2013, no pet.) (mem. op.) (declining to address challenges to trial court's findings providing alternative basis for judgment).

## Release of Claims

In his third issue, Subodh asserts the trial court erred by rendering judgment against him based on claims that had been released in the mediated settlement agreement. Subodh specifically challenges the trial court's conclusion that the Note was not included in the "dispute" covered by the settlement agreement. We review the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002);

A release is a contractual arrangement that operates as a complete bar to any later action based upon matters covered in the release. *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, No. 05-11-01303-CV, 2014 WL 2808126, at *7 (Tex. App.—Dallas June 20, 2014, no pet. h.). A release is subject to the rules of construction governing contracts, including the rules relating to ambiguity. *Id.* When construing a contract, "our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract." *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding) (per curiam). To understand that intent, we examine the contract as a whole in light of the facts and circumstances present when the contract was entered. *Americo Life, Inc. v. Myer*, No. 12-0739, 2014 WL 2789429, at *2 (Tex. June 20, 2014). We must consider the entire writing in an effort to harmonize and give effect to the provisions of the contract so that none will be rendered meaningless. *Italian Cowboy Partners,*

–10–

*Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). If a contract can be given a certain or definite legal meaning, it is not ambiguous. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). An unambiguous contract will be enforced as written. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam).

To release a claim effectively, the releasing instrument must "mention" the claim to be released. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 697–98 (Tex. 2000) (discussing *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991)); *McCullough*, 2014 WL 2808126, at *7. However, it is not necessary for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate*, 20 S.W.3d at 698; *McCullough*, 2014 WL 2808126, at *7. Rather, "a valid release may encompass unknown claims and damages that develop in the future." *Keck, Mahin, & Cate*, 20 S.W.3d at 698; *see also McCullough*, 2014 WL 2808126, at *7. Further, although the "mention" requirement does not bar general, categorical releases, such releases are to be narrowly construed. *Brady*, 811 S.W.2d at 938; *McCullough*, 2014 WL 2808126, at *7. We also construe releases in light of the facts and circumstances surrounding the execution of the release. *Brady*, 811 S.W.2d at 939. Claims not "clearly within the subject matter of the release" are not discharged, even if those claims exist when the release is executed. *Id.* at 938; *McCullough*, 2014 WL 2808126, at *7.

The settlement agreement provided the parties desired to settle "all claims and causes of action of any kind whatsoever which the parties have or may have arising out of the transaction or occurrence which is the subject of this Dispute." The settlement terms provided that (1) Suhas, Kothari, and Santa Fe Lofts IV would pay Subodh $1,515,000 when the construction loan for the Santa Fe project closed and $420,000, in monthly installments, from the development fee

during the course of construction; (2) Hamilton would pay Subodh $65,000 when the construction loan for the Santa Fe project closed; and (3) when the construction loan for the Santa Fe project closed, Subodh would transfer his interest in the partnership to Suhas and Kothari.  The parties agreed to:

> release, discharge, and forever hold the other harmless from any and all claims, demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted in the above Dispute as of this date, arising from or related to the events and transactions which are the subject matter of this Dispute.

 The settlement agreement does not define "Dispute."

Subodh argues the Note was necessarily related to the sale of his interest in the Santa Fe project, and therefore is included in the "Dispute" because the trial court found the parties agreed the Note would be paid when Subodh received money from the Santa Fe project.  Suhas contends, on the other hand, that the agreement references only the terms of the sale of Subodh's interest in the Santa Fe project, does not reference the Note, and all the credible evidence showed the Note was not included in the mediation.

Although the parties present conflicting interpretations of the settlement agreement, neither party contends the agreement is ambiguous.  However, the question of whether an agreement is ambiguous is a question of law.  *Coker*, 650 S.W.2d at 394; *McCullough*, 2014 WL 2808126, at *10.  We may conclude a contract is ambiguous even if the parties do not plead ambiguity or argue the agreement contains an ambiguity.  *See Coker*, 650 S.W.2d at 394; *McCullough*, 2014 WL 2808126, at *10.  A lack of clarity does not create an ambiguity, and a contract is not ambiguous simply because the parties advance conflicting interpretations. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *McCullough*, 2014 WL 2808126, at *10.  An ambiguity arises only when an agreement is susceptible to more than one reasonable meaning after application of established rules of

–12–

construction. *Universal Health Servs., Inc.*, 121 S.W.3d at 746; *McCullough*, 2014 WL 2808126, at \*10. Although the parol-evidence rule precludes considering evidence that would render a contract ambiguous when the document, on its face, is capable of a definite legal meaning, it does not prohibit the consideration of surrounding facts and circumstances that inform the contract text and render it capable of only one meaning. *Americo Life, Inc.*, 2014 WL 2789429, at \*2.

Considering the facts and circumstances surrounding the execution of the settlement agreement, we conclude the trial court did not err by determining the Note was not clearly within the subject matter of the release. *See Americo Life, Inc.*, 2014 WL 2789429, at \*2; *Brady*, 811 S.W.2d at 939–939. It was undisputed that the purpose of the mediation was to resolve the terms of the sale of Subodh's interest in the Santa Fe project to Suhas and Kothari. Prior to the mediation, Subodh indicated he wanted to resolve the Note after the closing of the construction loan for the Santa Fe project. There were no offers or demands made on the Note during the mediation. The terms set out in the settlement agreement relate only to how much Subodh would be paid for his interest in the Santa Fe project, when he would be paid for his interest, and the manner in which the payments would be made. The settlement agreement does not mention the Note, does not include Nilesh, and does not state how Suhas's and Nilesh's claims based on the Note are being resolved. We conclude the trial court did not err by determining the Note was not related to the "Dispute" that was the subject of the mediation. *See Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("[C]ourts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained."). We resolve Subodh's third issue against him.

**Attorney's Fees**

In his fourth issue, Subodh asserts the trial court erred by failing to award him attorney's fees based on Suhas's breach of the settlement agreement. Subodh specifically argues that, because the trial court's judgment should be vacated on the basis that the release encompassed the Note, he is the prevailing party and entitled to recover his attorney's fees. We have concluded the trial court did not err by determining the Note was not released under the settlement agreement. Accordingly, Subodh is not the prevailing party and is not entitled to recover his attorney's fees for a breach of the settlement agreement. We resolve Subodh's fourth issue against him.

We affirm the trial court's judgment.


121547F.P05


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SUBODH NAIK AND HEMA NAIK,
Appellants

No. 05-12-01547-CV     V.

SUHAS NAIK, Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 1-11-0408.
Opinion delivered by Justice Bridges.
Justices Moseley and Evans participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

     It is **ORDERED** that appellee SUHAS NAIK recover his costs of this appeal from appellants SUBODH NAIK AND HEMA NAIK.

Judgment entered July 23, 2014