**Dissenting Opinion Filed March 18, 2021**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00291-CV

## HEADINGTON ROYALTY, INC. AND HEADINGTON ENERGY PARTNERS, LLC, Appellants
## V.
## FINLEY RESOURCES, INC., FINLEY PRODUCTION CO. L.P. AND PETRO CANYON ENERGY, LLC, Appellees

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-01160-2018**

## DISSENTING OPINION

Before Justices Osborne, Partida-Kipness, and Pedersen, III[1]
Dissenting Opinion by Justice Partida-Kipness

This appeal presents a question of contract interpretation involving a release

in an agreement for the exchange of mineral rights associated with certain tracts of

land in Loving County, Texas. The majority's interpretation of the term

"predecessors" in the Release fails to acknowledge the context of the circumstances

surrounding the PCH Agreement, including the events leading to its formation, the

---

[1] Justice Carlyle participated in the submission of this case at oral argument with Justices Osborne and Partida-Kipness. Justice Carlyle did not participate in the decision of this case. Justice Pedersen has read the briefs, reviewed the record, listened to oral argument, and is the author of the majority opinion.

relationships of the parties, each party's motivations for entering the agreement, and the intentions of the parties as expressed in the agreement. The majority's interpretation of the Release also impermissibly adds language to the Release, and the majority opinion conflicts with this Court's prior opinions.[2] Because I disagree with the majority's analysis and conclusion, I respectfully dissent.

## MEANING OF "PREDECESSORS"

The primary question in this appeal is whether Finley and Petro Canyon established as a matter of law that the Release in the PCH Agreement unambiguously covered Headington's claims against Finley. Headington does not dispute that its claims against Finley are within the subject-matter scope of the Release. Headington only contests Finley's status as a released party under the plain language of the Release.

The focus of that challenge is on the meaning and scope of the word "predecessors" as used in the Release:

> [Headington] waives, releases, acquits and discharges **Petro Canyon and its affiliates and their respective officers, directors, shareholders, employees, agents, predecessors and representatives** for any liabilities, claims, demands, causes of action or obligations, of whatever kind or character, . . . related in any way to the Loving County Tract; . . . .

(emphasis added).

---

[2] *Schomburg v. TRW Vehicle Safety Sys., Inc.*, 242 S.W.3d 911, 913 (Tex. App.—Dallas 2008, pet. denied); *Chang v. N. Tex. Mesbic, Inc.*, No. 05-99-01228-CV, 2000 WL 1048534, at *2–3 (Tex. App.—Dallas July 31, 2000, pet. denied) (not designated for publication).

Finley and Petro Canyon contend, and the trial court agreed, that "predecessors" includes a predecessor-in-title or predecessor-in-interest to the property interest that is the subject of the agreement. Headington maintains, and the majority holds, that in the Release "predecessors" means "corporate predecessors" and is limited to prior corporate forms of Petro Canyon and its affiliates or individuals who used to be an officer, director, shareholder, employee, agent, or representative of Petro Canyon or its affiliates. Under that construction, Finley is not a corporate predecessor of Petro Canyon or its affiliates and, therefore, is not a released party.

To reach that conclusion, the majority employs the canon of *noscitur a sociis*, which means "it is known by its associates" and directs that similar terms be interpreted in a similar manner. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441–42 (Tex. 2011) (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750 n.29 (Tex. 2006)). Under the interpretive canon of *noscitur a sociis*, the meaning of an uncertain word or phrase can be revealed by its association with other nearby words or phrases. *Fiess*, 202 S.W.3d at 750 n.29. The Fifth Circuit describes this canon as:

> . . . a traditional means of limiting statutory or contract words from being given every conceivable meaning. Instead, when a list of words contains some whose generally accepted meanings have a commonality, then those associate words should limit a single word that has more varied meanings.

–3–

*Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 F. App'x 907, 912 (5th Cir. 2012) (interpreting the word "penalties" in relation to the words surrounding it in the phrase "fines, penalties or taxes" to conclude that "penalties" was limited to payments made to the government).

Here, the released parties are listed as "Petro Canyon and its affiliates and their respective officers, directors, shareholders, employees, agents, predecessors and representatives . . . ." The majority construes this list of released parties as "entity-related groups" affiliated with Petro Canyon by corporate relationship and not by their interest in the property. The majority describes these entities as "Players" as opposed to "chain of title-related owners of the real property interest" that the majority labels as "Spectators." More specifically, the majority concludes that "predecessors" includes only the following: (1) "prior forms" of Petro Canyon and its affiliates, and (2) "individuals who may no longer serve Petro Canyon and its affiliates but previously served in the capacity as an officer, director, shareholder, employee, agent, or representative." I disagree with this interpretation for multiple reasons.

### A. The majority's conclusion is contrary to analogous authorities.

First, this interpretation is contrary to the interpretation of similar categorical lists by other courts. The majority cites four cases in support of its *noscitur a sociis* analysis: *TGS-NOPEC*, 340 S.W.3d at 441; *Fiess*, 202 S.W.3d at 750 n.29; *Victoria*

–4–

*Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991); *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 457 (Tex. 1997). None of these cases, however, are factually analogous to this case.

The *Brady* and *McKee* courts were not tasked with construing a categorical list of released parties to determine whether an unnamed party was subject to the release. In *Brady*, the court analyzed whether certain claims, not parties, were released in a settlement. 811 S.W.2d 939 (determining that claims were not released where the claims were not mentioned in the agreement and were not clearly within the subject matter of the agreement). In *McKee*, the court addressed whether a business auto policy provided coverage to the daughter of the corporate insured's president and sole shareholder. 943 S.W.2d at 457 (daughter was not a "family member" of the corporation, the named insured, or a designated person as defined in the policy). Further, neither court employed *noscitur a sociis* in their analysis.

Although *TCS-NOPEC* and *Feiss* employed the canon to construe a categorical list, the words in the categorical lists at issue were not similar to the words at issue here. *See, e.g.*, *TGS-NOPEC*, 340 S.W.3d at 442 (determining meaning of the term "license" as included in the phrase "receipts from the use of a patent, copyright, trademark, franchise, or license"); *see also Fiess*, 202 S.W.3d at 750–51 (construing meaning of "water damage" in ensuing-loss clause providing coverage for "ensuing loss caused by collapse of the building or any part of the building, water damage, or breakage of glass which is part of the building . . . .").

Intermediate appellate courts that have applied the canon of *noscitur a sociis* to a categorical list of entities like the one at issue here, however, have not construed the list as limited to "Players." Rather, these courts have concluded that the listed entities are related to each other and the named party by ownership interest or participation in the underlying subject matter of the agreement or by the ability to stand in the place of or assert the same rights as a party to a lawsuit. *See Fritts v. McDowell*, No. 02-16-00373-CV, 2017 WL 3821889, at *6 (Tex. App.—Fort Worth Aug. 31, 2017, pet. denied) (mem. op.); *see also McMahan v. Greenwood*, 108 S.W.3d 467, 491 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Moreover, when determining whether the unnamed party was covered by the release, the reviewing court considered the agreement's scope and content, and the evidence concerning the relationship between the parties specifically named in the release and the parties seeking protection of the release. *Fritts*, 2017 WL 3821889, at *6; *McMahan*, 108 S.W.3d at 491.

For example, the *Fritts* court construed a release in a settlement agreement that identified the released parties as the defendant's "directors, officers, shareholders, employees, representatives, agents, attorneys, affiliates, successors, and predecessors." *Fritts*, 2017 WL 3821889, at *2. Applying the canon of *noscitur a sociis*, the court determined that the list demonstrated an intent to release any individual or entity who owned an interest in or was involved with the defendant's operation for any claims included in the settlement. *Id.*

Similarly, in *McMahan*, the court was tasked with interpreting the meaning of the phrase "legal representatives" in a settlement agreement that included a release stating each party to the agreement released the other party and "his predecessor, successor, assigns, heirs, executors, administrators, and legal representatives." 108 S.W.3d at 491. McMahan and his former business partners entered the settlement agreement to end their business venture and resolve all claims between them. *Id.* at 476. McMahan later sued his former attorney J. Randle Henderson for legal malpractice and additional claims related to Henderson's drafting the formation documents for the business venture. *Id.* at 477. Henderson contended McMahan's claims against him were released under the settlement agreement because Henderson had been McMahan's "legal representative." *Id.* The court disagreed, determining "predecessor, successor, assigns, heirs, executors, administrators, and legal representatives," referred to "people or entities that could stand in the place of or assert the same rights as a party to a lawsuit." *Id.* at 491.

The *McMahan* court examined and considered the agreement in its entirety and considered case law to determine the generally accepted meaning of the term "legal representatives" and whether an attorney falls within that definition. *Id.* at 489–90, 491. The court concluded that an attorney did not fall within the term "legal representatives" in the release because

> . . . the term "legal representatives" occurs in a phrase which includes various entities which contemplate prospective parties or holders of an interest in an action—"predecessor, successor, assigns, heirs,

–7–

executors, administrators, and legal representatives"—rather than agents or those engaged in the practice of law. In that context, it seems more likely the release was referring to some sort of legal party substitute rather than outside counsel when it recited those who would be affected by the release.

*Id.* at 491. "Legal representatives" did not, therefore, "include attorneys or mere agents of the parties." *Id.*

Here, the term "predecessors" is part of a list of released parties that includes the "respective officers, directors, shareholders, employees, agents, [and] representatives" of Petro Canyon and its affiliates. Applying *Fritts* and *McMahan* here, the list of released parties refers to people or entities who (1) either hold or held an interest in the mineral rights transferred in the PCH Agreement (*see Fritts*, 2017 WL 3821889, at *2), or (2) can stand in the shoes of or assert the same rights as a party to the lawsuit (*see McMahan*, 108 S.W.3d at 491). As such, I conclude "predecessors" includes Finley because it is undisputed that Finley held the mineral rights at issue prior to transferring those rights to Petro Canyon.

And, like the agreements in *Fritts* and *McMahan*, the PCH Agreement includes language from which Finley can be identified as a released party. Although the PCH Agreement does not mention Finley by name, the agreement states that Petro Canyon accepts any plugging and restoration liability existing before the PCH Agreement with respect to the Arrington Lease. It is undisputed that Headington knew that Finley previously held the shallow rights under the Arrington Lease and considered filing suit against Finley due to Finley's alleged failure to provide

–8–

contractually-required notice regarding Finley's intention to plug and abandon the Arrington Wells. The reference to the Arrington Lease in the PCH Agreement would allow a stranger to the agreement to identify Finley as a predecessor to Petro Canyon in relation to the mineral rights at issue. *See Fritts*, 2017 WL 3821889, at *5 (release referred to an investment agreement that would allow a stranger to the agreement to identify agent listed in the investment agreement as a released party).

Moreover, the majority's determination that a "corporate predecessor" is simply the previous corporate entity in another entity's legal line of succession is not supported by the plain language of the agreement. The PCH Agreement addresses the transfer of property rights to Headington that were held at the time of the agreement by Petro Canyon and the rights and liabilities of Petro Canyon and Headington regarding those interests on a going-forward basis. To the extent Petro Canyon or its affiliates are successor entities, they would have succeeded to the rights and liabilities of their now-dissolved corporate predecessors, rendering meaningless any release of corporate predecessors under the PCH Agreement. The PCH Agreement itself, therefore, supports the trial court's conclusion.

This conclusion is further supported by authorities addressing the ordinary meaning of the term "predecessors." Where, as here, the Release does not define the term at issue, we use "the plain, ordinary and generally accepted meaning attributed to the term or word." *Pratt-Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 833 (Tex. App.—Dallas 2003, pet. denied). We may look to dictionaries for assistance

–9–

in finding that meaning. *Id.* In common usage, "predecessor" means someone who precedes another in some way. *Predecessor*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/predecessor (1. "one that precedes *especially*: a person who has previously occupied a position or office to which another has succeeded. 2. *Archaic*: ANCESTOR"); *Predecessor*, BLACK'S LAW DICTIONARY (8th ed. 2004) ("1. One who precedes another in an office or position. 2. An ancestor."). At least two editions of Webster's Third New International Dictionary of the English Language Unabridged include the following example for the use of predecessor in a sentence: "was my predecessor in title to my house." *Predecessor*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (1981, 2002). Thus, a "predecessor" is not only a defunct corporation whose rights have been vested in a successor, but any person or entity that came before another.

Case law further supports treating a predecessor-in-title to the mineral interest at issue as a "predecessor." A person or entity who precedes another as owner of a property interest or a tangible object is a predecessor-in-title or predecessor-in-interest to the subsequent owner. *See, e.g.*, *Odessa Tex. Sheriff's Posse, Inc. v. Ector Cty.*, 215 S.W.3d 458, 467 (Tex. App.—Eastland 2006, pet. denied) (a successor-in-interest is one who follows another in ownership or control of property); *see also Session v. Woods*, 206 S.W.3d 772, 776 (Tex. App.—Texarkana 2006, pet. denied) (title search showed appellee and his predecessors-in-title were the only parties with an interest of record in the property); *Estrada v. Cheshire*, 470 S.W.3d 109, 124

(Tex. App.—Houston [1st Dist.] 2015, pet. denied) (using term "predecessor" to describe relationship between adverse-possessing plaintiff and prior adverse possessor in privity of estate with plaintiff). Indeed, Texas courts use the terms "predecessor" and "predecessor-in-title" interchangeably when discussing prior property owners or entities holding title to land or mineral interests prior to the current parties before the court. *See, e.g.*, *Othen v. Rosier*, 226 S.W.2d 622, 625, 628 (Tex. 1950) (referring to the parties who previously owned 100 acres of the Rosiers' land as the Rosiers' "predecessor in title" but referring to the parties who previously owned Othen's land as Othen's "predecessors"); *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213–14, 219 (Tex. App.—Texarkana 2006, pet. denied) (using the terms "predecessors" and "predecessors in title" interchangeably when describing entities that possessed a mineral estate before Andarko); *Courseview, Inc. v. Phillips Petroleum Co.*, 258 S.W.2d 391, 393–94 (Tex. App.—Galveston 1953, writ ref'd n.r.e.) (using "predecessors" and "predecessors-in-title" interchangeably when referring to same parties).

For these reasons, I conclude the majority misapplied the canon of *noscitur a sociis* here and reached a conclusion that is contrary to analogous authorities and commonly accepted definitions of the term "predecessors."

**B.    The majority's interpretation requires adding language to the Release.**

The majority's interpretation of the term "predecessors" requires us to add "corporate" as a qualifying phrase to "predecessors" to which I continue to disagree. The parties could have easily inserted the word "corporate" into the Release had they intended to restrict releasing parties to "corporate predecessors." *See Praeger v. Wilson*, 721 S.W.2d 597, 601 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.) ("[I]t would have been an easy matter to include" the qualifying phrase "covering Tract 1" if the parties had intended to restrict the phrase "any and all subsequent agreements" to agreements "covering Tract 1."). The parties did not do so, and I would decline Headington's invitation to add the qualifier for them.

**C.    Context matters but is disregarded under the majority's analysis.**

Further, the majority's interpretation requires us to ignore the context of the underlying transaction. Context, however, must be considered when interpreting terms in a categorical list. *See U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008) ("Under the traditional canon of construction noscitur a sociis . . . each of the words used here must be construed in context."). And context reaches beyond the phrase itself to include how the entire agreement was formed. *See, e.g.*, *Context*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining context as "1. The surrounding text of a word or passage, used to determine the meaning of that word or passage <his remarks were taken out of context>. 2. Setting or environment <in

–12–

the context of foreign relations>."); *see also Fritts*, 2017 WL 3821889, at *5; *McMahan*, 108 S.W.3d at 491.

Obviously parol evidence may not be considered when interpreting an unambiguous provision. But the context surrounding the contract matters and must be considered when construing the contract to determine the true intent of the parties. Here, the PCH Agreement came about as a result of Finley's prior ownership of shallow rights in the Loving County Tract and Finley's purported actions or inactions regarding those rights. Headington asserted in its original petition that it sought to acquire deep rights under the lands previously subject to the Arrington Lease to mitigate the damages purportedly caused when Finley ceased production on the Arrington Wells. Through the PCH Agreement, Headington acquired both the shallow rights and deep rights of the Loving County Tract. Petro Canyon viewed the acreage swap as an opportunity to negotiate a release of potential claims Headington indicated it could pursue against Finley for which Petro Canyon would be liable under the Assignment. It was also undisputed that Petro Canyon has no corporate predecessors.

This evidence provides the context surrounding the execution of the Release and aids the Court's construction by giving the words of the Release "a meaning consistent with that to which they are reasonably susceptible." *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 765 (Tex. 2018) (parol evidence rule does not prohibit courts from considering extrinsic evidence of facts and circumstances surrounding

contract's execution as "an aid in the construction of the contract's language," but the evidence may only "give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to 'interpret' contractual terms"); *Naik v. Naik*, 438 S.W.3d 166, 175 (Tex. App.—Dallas 2014, no pet.) (releases are construed in light of the facts and circumstances surrounding their execution). As noted above, the ordinary meaning of the term "predecessors" makes the term reasonably susceptible to the conclusion that a predecessor-in-title to the mineral interests was included in the definition of "predecessors." The evidence was, therefore, properly considered by the trial court and is appropriately considered on appeal. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) ("Extrinsic evidence may, indeed, be admissible to give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to 'interpret' contractual terms."). If the parties intended to limit the released parties to corporate-level entities regardless of the entity's current or past interests in the mineral rights, then inclusion of "predecessors" in the list was superfluous because no such entity exists under these facts.

### D. The majority's interpretation of "predecessors" conflicts with our holding in *Chang v. North Texas Mesbic, Inc.*

Finally, this Court has already concluded that the term "predecessor" includes a predecessor-in-interest. *Chang v. N. Tex. Mesbic, Inc.*, No. 05-99-01228-CV, 2000 WL 1048534, at *2–3 (Tex. App.—Dallas July 31, 2000, pet. denied) (not

designated for publication). The release in *Chang* "released Chang's Note-related claims against Formosa's *predecessors* and those in privity with Formosa, including Mesbic." *Id.* at *3 (emphasis added). This Court concluded as a matter of law that, as an assignor of the Note to Formosa, Mesbic was Formosa's predecessor-in-interest as to the Note. *Id.* Because the release specifically released note-related claims against Formosa's *predecessors*, a panel of this Court concluded that "Chang's claims against Mesbic regarding the Note were released." *Id.* at *4. In so concluding, this Court necessarily determined that a predecessor-in-interest is included within the meaning of the term "predecessor" for purposes of a release where, as here, that term is not modified by another limiting term. The panel's determination that Mesbic was also in privity with Formosa is a separate and distinct holding that does not diminish the panel's interpretation of the term "predecessor."

Under this record, I would apply the same analysis and conclude Finley and Petro Canyon proved as a matter of law that the Release's use of "predecessors" was not limited to "corporate predecessors." I would, therefore, affirm the trial court's judgment rejecting Headington's proposed definition of the term "predecessors." Because the majority concludes otherwise, I respectfully dissent.

### DESCRIPTIVE PARTICULARITY UNDER *DUNCAN*

Additionally, I disagree with the majority's conclusion that the release fails the descriptive particularity test as set out in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419–20 (Tex. 1984). The majority concludes that Finley is not

described with sufficient particularity in the Release because "[t]he PCH Agreement contains neither (i) information about Finley and 'its connection with the activity for which Petro Canyon signed the Release' nor (ii) identification or description of Petro Canyon's 'predecessors' beyond the sole term 'predecessor.'" According to the majority, "Without further descriptive particularity, a stranger could not readily identify Finley as a 'predecessor' of Petro Canyon." While this would certainly be an easier case if Finley was mentioned in the PCH Agreement or the parties had specifically defined "predecessors," that information is not required for Finley to meet the *Duncan* test. Indeed, if such information was included in the PCH Agreement, this dispute would be moot. But that is not the case, and we must look to the entire PCH Agreement and the context in which it was consummated to determine whether a stranger could readily identify Finley as a predecessor subject to the Release. Applying these standards, I conclude Finley is readily identifiable under *Duncan*.

In *Duncan*, Carolyn Duncan's husband was killed as a result of a negligently flown Cessna 150 airplane that crashed in New Mexico. 665 S.W.2d at 418. Duncan settled her initial lawsuit against the pilot and the airplane owner. *Id.* The settlement agreement included a release stating that Duncan and her minor children release "release Air Plains West, Inc., its agents, servants and employees, and the Estate of Benjamin A. Smithson, Jr., deceased, ***or any other corporations*** or persons whomsoever responsible therefor, whether named herein or not, from any and all

–16–

claims of every kind and character whatsoever . . . ." *Id.* at 418 (emphasis added). Duncan then filed suit against Cessna, the manufacturer of the airplane. *Id.* Cessna claimed that its liability to the Duncan family was discharged by the Duncans' release of Air Plains West. *Id.* The court ultimately held that Cessna was not protected by the Duncans' release because the reference to "all corporations" did not supply the descriptive particularity necessary to identify and release Cessna. *Id.* at 420. The *Duncan* court reasoned that "the mere naming of a general class of tortfeasors in a release does not discharge the liability of each member of that class." *Id.* at 419–20. The majority concludes the reference to "predecessors" in the Release at issue here, like the use of "all corporations" in the *Duncan* release, is too general to identify and release Finley. By equating a broad, all-encompassing phrase like "all corporations" to the term "predecessors" here, the majority is comparing apples to oranges.

The Release in the PCH Agreement is different from the *Duncan* release because it does not merely refer to an unlimited, general class of potential defendants unrelated to Petro Canyon. Rather, it expressly lists Petro Canyon and ***its*** predecessors as released parties. I would conclude that the Release's reference to the predecessors of Petro Canyon is sufficient to identify Finley because Finley's identity and its connection with the activity for which Petro Canyon signed this Release—the transfer of mineral interests in the Loving County Tract—are not in doubt. *See, e.g.*, *Schomburg*, 242 S.W.3d at 915; *see also Thom v. Rebel's Honky*

–17–

*Tonk*, No. 03-11-00700-CV, 2013 WL 1748798, at \*7 (Tex. App.—Austin Apr. 3, 2013, no pet.) (mem. op.) (release's reference to "owners" was sufficient to identify Rainbow Cattle Company because identity and connection with the activity for which appellant signed the release was not in doubt); *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 114 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ("In releasing 'the Club' from any injuries suffered while participating in the center's programs, it is clear that Winkler intended to release any claim against all individuals and entities involved in the operation, maintenance, and administration of the center.").

**HEADINGTON'S REMAINING ISSUES**

Moreover, I respectfully dissent to the majority's determinations of Headington's remaining issues.

### A.   Third party beneficiary determination

The majority determines that Finley is not a third-party beneficiary of the PCH Agreement. To the contrary I would hold that Finley is a released party and a third-party beneficiary to the contract. *See Pratt-Shaw*, 122 S.W.3d at 830–31 (the inclusion of a non-party in a waiver or release clause indicates the parties' intent to confer a direct benefit on the non-party); *see also Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730 (Tex. App.—Dallas 1992, writ denied) (a party benefitted by waiver provision is a third-party beneficiary of the contract and entitled to rely upon and to enforce all of the contract's provisions).

Additionally, because I would overrule Headington's first issue, which addressed the sole ground upon which the trial court based the summary judgment rulings, this Court would not need to address Headington's second issue. *See* TEX. R. APP. P. 47.1 (requiring appellate court to address only issues necessary for disposition of appeal); *see also Fritts*, 2017 WL 3821889, at *8. Accordingly, I would overrule this issue.

### B. Appellees' waiver defense

In its third issue, Headington argues the trial court should have rejected the affirmative defense of waiver asserted by Finley and Petro Canyon and granted partial summary judgment in Headington's favor. The majority concludes Headington did not "expressly" waive claims as to Finley because the PCH Agreement does not refer to Finley specifically. I disagree with that analysis.

Waiver is an intentional relinquishment of a known right either made expressly, indicated by conduct that is inconsistent with an intent to claim the right, or shown by the circumstances surrounding the making of the contract. *Am. Fracmaster, Ltd. v. Richardson*, 71 S.W.3d 381, 389 (Tex. App.—Tyler 2001, review granted, judgment vacated and remanded by agreement) (citing *U.S. Fid. & Guar. Co. v. Bimco Iron & M. Corp.*, 464 S.W.2d 353, 357 (Tex. 1971)). Waiver can be proven by showing that the other party to the contract had knowledge of the right and remained silent or inactive for an unreasonable period of time. *Furr v. Hall*, 553 S.W.2d 666, 674 (Tex. App.—Amarillo 1977, writ ref. n.r.e.).

Petro Canyon's summary judgment evidence established that Headington knew Petro Canyon negotiated a broad release to avoid future liability for Finley's alleged contract breaches. Yet, Headington made no effort to carve out its claims against Finley from the Release and, instead, made the deliberate decision to sign the release in order to obtain Petro Canyon's interest in the Loving County Tract. Applying the applicable standard of review, I conclude the trial court properly determined that Headington waived its potential claims against Finley and its claims against Petro Canyon and, as such, properly granted summary judgment on the affirmative defense of waiver.[3]

## C.     The declaratory judgment in favor of Petro Canyon

In its fourth issue, Headington urges this Court to vacate the trial court's declaratory judgment because it is duplicative of issues raised in Finley's and Petro Canyon's defensive pleadings on which the trial court granted relief. Petro Canyon contends, however, that the trial court properly granted its request for declaratory judgment because the trial court's declaration regarding the term "predecessor" will affect Petro Canyon and Headington's continued relationship under the PCH Agreement. I agree with Petro Canyon.

---

[3] The majority argues that my construction favors forfeiture of claims. But no such forfeiture occurred here. The record reflects an arms-length negotiation in which Headington could have done more to preserve its claims against Finley. Although my construction would release Headington's claims against Finley, that result is not a forfeiture of the rights provided Headington under the PCH Agreement. Rather, this presents a waiver of rights that Headington did not negotiate into the PCH Agreement at all.

"[W]hen a declaratory judgment counterclaim has greater ramifications than the original suit, the court may allow the counterclaim." *Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 863 (Tex. App.—Dallas 2009, pet. denied). Here, the underlying suit focused on claims against Finley and whether the PCH Agreement released Finley from liability for those claims. But the PCH Agreement, which covers the entirety of a large property tract, remains in place, as does the contractual relationship between Petro Canyon and Headington. A future dispute over whether another entity is a predecessor of Petro Canyon or one of its affiliates regarding part of the Loving County Tract was possible.

The declaratory judgment determining that the term "predecessors" includes "predecessors-in-title" as to the subject property efficiently and effectively addresses an issue that could be raised in future litigation related to those other potential parties. In its live pleading, Petro Canyon specifically asked for a declaration that Finley was a "predecessor" under the terms of the Release. Petro Canyon also pleaded that the actual controversy for which it sought declaratory judgment was "the proper construction of the PCH Agreement, and in particular the effect of the use of the term 'predecessors' in the release provision in favor of Petro Canyon." In its summary judgment order, the trial court found "as a matter of law that the word 'predecessor' as used in Paragraph VII of the release includes an entity that is a predecessor in title to the subject property interest." In that order and the final judgment, the trial court again granted declaratory judgment in general terms, not

limiting its declaration to whether Finley was a "predecessor" under the Release. Under these facts, I conclude the declaratory judgment was proper because generally defining those terms had greater ramifications than those in the current lawsuit. *See BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990) (orig. proceeding) (request for declaratory judgment proper where the party sought an interpretation of a contract which would have the effect of defining the obligations of the parties under that contract for the foreseeable future and would, therefore, have "greater ramifications than [the] original suit"). I would, therefore, overrule Headington's fourth issue.

### D.    Striking of Headington's summary judgment evidence

In its final issue, Headington seeks review of the trial court's orders sustaining objections to Headington's summary judgment evidence. Because I would overrule Headington's first issue and affirm the judgment, the Court would need not address evidentiary rulings concerning only Headington's competing motion. *See* TEX. R. APP. P. 47.1 (requiring appellate court to address only issues necessary for disposition of appeal); *see also Fritts*, 2017 WL 3821889, at *8. Accordingly, I would overrule Headington's final issue.

## CONCLUSION

After reviewing the parties' briefs and the record and hearing the oral arguments of counsel, I conclude that Finley and Petro Canyon established their right to summary judgment as a matter of law on their affirmative defenses of waiver and

release, and the trial court properly granted Petro Canyon's counterclaim for declaratory judgment. Accordingly, I would overrule Headington's appellate issues and affirm the trial court's judgment. To reach the opposite result, the majority impermissibly adds words to the Release, disregards the context of the dispute, and misapplies the very canon of construction on which they base the opinion. The majority's analysis is fundamentally flawed, and I respectfully dissent.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

190291DF.P05