Mark SCHOMBURG and Cynthia
S. Schomburg, Appellants,

v.

TRW VEHICLE SAFETY SYSTEMS,
INC., Appellee.

No. 05–06–01467–CV.

Court of Appeals of Texas,
Dallas.

Jan. 8, 2008.

Rehearing Overruled Jan. 8, 2008.

---

Charles W. McGarry, Law Office of Charles McGarry, Dallas, TX, for Appellants.

David Richard Tippetts, Pillsbury Winthrop Shaw Pittman, L.L.P., Jennifer Bruch Hogan, Hogan & Hogan, L.L.P., Houston, TX, for Appellee.

Before Justices WHITTINGTON, WRIGHT, and FITZGERALD.

## OPINION ON MOTION FOR REHEARING

Opinion by Justice WRIGHT.

Appellants Mark and Cynthia Schomburg filed a motion for rehearing. We deny appellants' motion for rehearing. On the Court's own motion, we withdraw this Court's opinion dated October 23, 2007 and vacate the judgment of that date. This is now the opinion of the Court.

Mark and Cynthia Schomburg appeal a summary judgment rendered in favor of

TRW Vehicle Safety Systems, Inc. (TRW). In a single issue, the Schomburgs contend the trial court erred in granting summary judgment on TRW's affirmative defense of release. We overrule the Schomburgs' issue and affirm the trial court's judgment.

## Background

On November 17, 2003, Mark Schomburg was injured in a car accident in which his vehicle, a Chevrolet S–10 Blazer, rolled over. Following the accident, the Schomburgs sued General Motors Corporation for products liability and negligence. The Schomburgs settled their claims with GM and executed a Confidential Settlement Agreement and Complete Release on December 8, 2004.

The settlement agreement defines the released party as "General Motors Corporation, its related and affiliated companies or corporations, agents, servants, authorized dealers, component suppliers, ..." The release provides that it applies to all claims of the Schomburgs that arise from or relate to the accident on November 17, 2003.

On December 27, 2005, a little over one year after signing the settlement agreement with GM, the Schomburgs sued TRW, the seatbelt manufacturer. They claimed the "vehicle components" manufactured by TRW were not crashworthy and were defectively designed and manufactured. TRW asserted the affirmative defense of release and sought summary judgment on the ground of release. The trial court granted TRW's motion and this appeal timely followed.

## Standard of Review

■ The standard of review for a summary judgment is well-established. TEX.R. CIV. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex. 1990). In reviewing a traditional motion for summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgm't Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

## The Release

In their sole issue, the Schomburgs contend the trial court erred in granting summary judgment on the ground that they had released TRW through their settlement with GM. They contend that TRW was not released because it was not specifically named.

■ A release is a complete bar to any later action based upon matters covered in the release. *Deer Creek Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198, 201 (Tex.App.-Dallas 1990, no writ). A release applies to a party that is either specifically identified in the release or described with sufficient particularity. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex.1984). When a release refers to a related document, that document should be considered when reviewing a release. *Anheuser–Busch Cos. v. Summit Coffee Co.*, 858 S.W.2d 928, 932–34 (Tex. App.-Dallas 1993, writ denied), *vacated on other grounds*, 514 U.S. 1001, 115 S.Ct. 1309, 131 L.Ed.2d 192, (1995).

■ The settlement agreement between the Schomburgs and GM defined the released party as follows:

The released party is General Motors Corporation, its related and affiliated companies or corporations, agents, servants, authorized dealers, component suppliers, legal representatives, attorneys, employees, directors, shareholders, members, officers, subsidiaries, predecessors, successors, and insurers, and all persons, firms, organizations, or corporations in privity with the foregoing (even if such persons or entities are not specifically named in this Confidential Settlement Agreement and Complete Release).

The Schomburgs released "all claims, actions, demands, and causes of action owned or held by [the Schomburgs] . . . that arise from, result from, or in any way relate to the accident in question that occurred on or about November 17, 2003 in Dallas County, Texas, which accident is more particularly described above and in the pleadings on file in this action." The settlement agreement further states that it includes "any liability whatsoever that arises directly or indirectly out of or is in any manner related to the subject vehicle involved in this action, or its *component parts,* or manufacture, design, . . . ." (emphasis added). The settlement agreement referenced the Schomburgs' complaint against GM. Their complaint alleged that the vehicle was not crashworthy and that it was "unreasonably dangerous as designed, manufactured, assembled, marketed, and tested because [GM] knew that the vehicle was unsafe and dangerous."

The Schomburgs sued TRW alleging that the seatbelt restraint system that it supplied by TRW to GM was not crashworthy and was defective. They alleged the seatbelt failed to properly restrain Mark Schomburg during the accident.

The factual allegations in the complaint in the GM lawsuit and the petition in the TRW lawsuit are identical. TRW filed an answer and asserted the affirmative defense of release.

The supreme court has held that a "tortfeasor can claim the protection of a release only if the release refers to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt." *Duncan,* 665 S.W.2d at 420. In *Duncan,* the plaintiff's husband was killed in an airplane crash. She sued the pilot and owner of the aircraft. They settled and signed a release that discharged the defendants and "any other corporations or persons whomsoever responsible therefor, whether named herein or not, from any and all claims of every kind and character whatsoever, . . . on account of the fatal injuries by [the deceased], which resulted in his death, as the result of an airplane crash occurring on or about October 19, 1976." *Id.* at 418. Duncan then sued Cessna, the aircraft manufacturer. Cessna asserted the affirmative defense of release. The supreme court held that the release did not apply to Cessna because "all corporations" did not sufficiently describe the aircraft manufacturer. *Id.* at 420.

This Court has previously held that a release in a lawsuit involving a motor vehicle accident that applied to an employer and its "agent, servant" was sufficient to include the release of the employee. *See Randall v. Dallas Power & Light Co.,* 745 S.W.2d 397, 401 (Tex.App.-Dallas 1987), *rev'd on other grounds,* 752 S.W.2d 4 (Tex. 1988). In so holding, this Court noted that the employee's identity and connection to the tortious event could not be doubted where the release specified the date and location of the accident. *Id.*

In another case, the release defined the released parties as "[H. R. Management

Company], all its affiliated companies, parent companies, subsidiaries, officers, agents, and employees, its insurer [Atlantic Lloyds], and all its affiliated companies, officers, agents, and employees." *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 219 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). The court viewed the released parties as a specific group who had the authority to act on behalf of HRM or Atlantic Lloyds in connection with the underlying lawsuit. *Id.* at 219. The court held that the release applied to (1) Centennial Insurance Company who issued two of HRM's policies in dispute, (2) Atlantic Mutual Insurance Company, the owner of Centennial, and (3) two Atlantic Mutual employees who handled the plaintiffs' claim. *Id.* In doing so, the court distinguished the release from those that attempt to include a virtually limitless class of potential tortfeasors. *Id. See also Frazer v. Texas Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 824 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (court of appeals held document that released Texas Farm Bureau Mutual Insurance Company "and its affiliated companies" sufficiently identified Texas Farm Bureau Underwriters such that its identity was not in doubt).

The Schomburgs cite to an unpublished case out of this court to support their contention that the release did not sufficiently identify TRW. *See Wynne v. Lindauer*, No. 05–05–01814–CV, 2002 WL 1608224 (Tex.App.-Dallas 2002, no pet.) (not designated for publication). The parties in *Wynne* executed a release as part of an agreed judgment in the division of their marital estate. Their attorneys were included among the released parties. The wife then sued her attorneys for legal malpractice. The attorneys obtained summary judgment on the ground of release. This Court reversed the summary judgment holding that the release of malpractice claims was not a dispute contemplated by the parties when signing the release. *Id.* This Court then stated, without any analysis, that the attorneys were not released because they "clearly and unambiguously were not parties to the agreement, Wynne and Murphy were." This statement does not impact our analysis of this case under *Duncan.*[1]

In this case, the settlement document identified the accident by date, location, and the vehicle identification number of the Schomburgs' vehicle. The Schomburgs released GM and its components suppliers. They also released all claims related to the vehicle and its component parts.

We conclude the term "component suppliers" is sufficiently descriptive so as to identify TRW, the supplier of the seatbelt restraint system. It is not so broad as the release in *Duncan* that referred to any other corporations or persons whomsoever responsible therefor. Although the release does not name TRW, it identifies a specific group who supplied parts to GM for the manufacture of a specifically identified vehicle. It was this vehicle that was alleged not to be crashworthy in both the lawsuits against GM and TRW. TRW is readily identifiable from the description.

---

1. At oral argument, counsel for the Schomburgs cited the Court to another unpublished opinion. *See Ambrosio v. EPS Wireless, Inc.*, 05–99–01442–CV, 2000 WL 1160696 (Tex. App.-Dallas 2000, no pet.) (not designated for publication). In *Ambrosio*, the plaintiff appealed from a summary judgment on his breach of contract claim against EPS Wireless employee David Lopez in his individual capacity. In a release between the plaintiff and EPS, the plaintiff released EPS and its employees. This court held that Lopez was released as an employee of EPS but not in his individual capacity. We do not find the holding in *Ambrosio* to be applicable to this case.

We overrule the Schomburgs' issue and affirm the trial court's judgment.