**Reverse and Remanded and Opinion Filed March 18, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00291-CV

**HEADINGTON ROYALTY, INC. AND HEADINGTON ENERGY
PARTNERS, LLC, Appellants
V.
FINLEY RESOURCES, INC., FINLEY PRODUCTION CO. L.P. AND
PETRO CANYON ENERGY, LLC, Appellees**

**On Appeal from the 366th Judicial District Court
Collin County, Texas
Trial Court Cause No. 366-01160-2018**

## OPINION

Before Justices Osborne, Partida-Kipness, and Pedersen, III[1]
Opinion by Justice Pedersen, III

This is a summary judgment appeal about the interpretation of a release

provision found in a contract that involves the exchange of mineral rights. The trial

court determined as a matter of law that (i) the release is unambiguous and (ii) the

term "predecessor" includes an entity that is a "predecessor-in-title" to the subject

property interest. Consequently, the trial court granted appellees' motions for

---

[1] Justice Carlyle participated in oral argument for this submission, but he did not participate in the decision. Justice Pedersen did not participate in oral argument for this submission, but he participated in the decision.

summary judgment and denied appellants' cross-motion for summary judgment. Because precedent requires (i) narrow construction of categorical releases and (ii) released parties to be named with such descriptive particularity that their identity or connection is not in doubt, we reverse the final judgment and remand the case to the trial court.

## I. BACKGROUND

### A. History of the Parties

The Arrington Lease, an oil and gas lease, covered all of Section 3, Block C-27, PSL Survey in Loving County, Texas (the "Loving County Tract"). The mineral rights under the Arrington Lease were horizontally severed, resulting in different parties' holding the rights to explore for, and develop the minerals at different depths.

From September 2012 to August 31, 2017, appellees Finley Resources, Inc. and Finley Production Co., L.P. (collectively "Finley") were the record-title owners of certain "shallow rights" under the Arrington Lease. Finley's "shallow rights" from the Arrington Lease consisted of the rights, title, and interest in and to oil, gas, and other minerals from the surface to 5,000 feet below the surface of the leasehold estate in the Loving County Tract created by the Arrington Lease. During that time, Finley operated two wells on the Loving County Tract (the "Arrington Wells"), which produced oil from the shallow rights.

From an assignment effective December 1993, appellants Headington Royalty, Inc. and Headington Energy Partners, LLC (collectively "Headington") held an 87.5% net revenue leasehold interest in the "deep rights" under the Arrington Lease.[2] Headington held an interest to the minerals in the depths below 5,000 feet from the surface. Furthermore, in 2014, Headington notified Finley that Headington was a successor to certain shallow rights in the Arrington Lease.

In early 2017, Petro Canyon Energy, LLC ("Petro Canyon") obtained a top lease[3] covering all of the Loving County Tract from WIRC, LLC (the "WIRC Lease"). The WIRC Lease provided Petro Canyon the shallow rights and the deep rights from the entirety of the Loving County Tract for the purpose of exploring, drilling, operating for, and producing oil and gas and minerals. Those rights, however, were made expressly subordinate to any preexisting oil and gas leases "which may or may not have expired and/or been released of record."

---

[2] Specifically, Headington Royalty Inc. held these rights.

[3] A top lease is a lease granted by a mineral owner during the existence of another lease that will become effective if and when the existing lease expires or terminates. *See TRO-X, L.P. v. Anadarko Petroleum Corp.*, 548 S.W.3d 458, 462 (Tex. 2018); *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 116 (Tex. App.—El Paso 2018, no pet.) ("In essence, a top lease is a back-up lease granted after premises have already been leased."); *Mitchell v. Mesa Petroleum Co.*, 594 S.W.2d 507, 513 (Tex. Civ. App.—San Antonio 1979, writ ref'd n.r.e.) ("If properly executed, the second lease, normally called a 'top lease,' is a valid and effective lease, but it is secondary and subordinate to the already existing oil and gas lease.").

## B. Notice of Potential Arrington Lease Termination and Assignment to Petro Canyon

In June 2017, Petro Canyon notified Finley that the Arrington Lease might have terminated by failing to produce in paying quantities. Petro Canyon requested information concerning Finley's operating expenses. Petro Canyon and Finley began negotiating an assignment of Finley's interest in the Loving County Tract. Those negotiations resulted in Finley's (i) making an Affidavit and Certification of Nonproduction and Operation, (ii) assigning to Petro Canyon by Quitclaim Assignment (the "Assignment") all its right, title, and interest, if any, in the Arrington Lease, effective August 31, 2017, and (iii) transferring operatorship of the Arrington Wells to Double Eagle Operating, LLC ("Double Eagle"), an affiliate of Petro Canyon, as of August 31, 2017.[4] The Assignment contained the following assumption and indemnification provision:

> [Petro Canyon] agrees to assume and perform, any and all of the liabilities and obligations, or alleged or threatened liabilities and obligations, of [Finley] under or with respect to the [Loving County Tract] . . . .

## C. Dispute Arises Between Headington and Finley

Before quitclaiming its interest in the Arrington Lease to Petro Canyon, Finley notified Headington that Finley intended to plug and abandon the Arrington Wells. However, according to Headington, this "notice" was too late because the Arrington

---

[4] Petro Canyon and Double Eagle share common ownership and control.

–4–

lease, including Headington's deep rights, had already terminated months earlier due to Finley's ceasing production on the wells.

Specifically, Headington alleges that Finley (i) ceased production on the Arrington Wells in December 2016 and (ii) did not restart production or commence or continue operations on the lands subject to the Arrington lease for over 90 days thereafter. Headington alleges (i) Finley's actions terminated both Finley's shallow rights and Headington's deep rights under the Arrington Lease and (ii) Finley's late notice constituted a breach of the assignments through which Finley had obtained its shallow rights under the Arrington Lease.

## D. Acreage Swap Agreement and Release Between Headington and Petro Canyon

Headington asserted in its original petition that (i) to mitigate the damages purportedly caused by Finley and (ii) to recoup lost revenues, it sought to acquire deep rights under the lands previously subject to the Arrington Lease. The summary judgment record shows that, in August 2017, Scott Mahand, a vice president at Headington, contacted Cody Campbell of Petro Canyon to negotiate an acreage swap related to the Loving County Tract. On September 12, 2017, Mahand proposed an acreage swap to Petro Canyon whereby (i) Petro Canyon would assign its interest in the Loving County Tract (i.e., the WIRC Lease) to Headington and (ii) Headington would assign its interest in other tracts (the Four Corners Tracts) to Petro Canyon.

The WIRC Lease was valuable to Headington because it included both the shallow rights and the deep rights of the Loving County Tract.

On October 3, 2017, Headington and Petro Canyon executed an agreement to swap the respective acreage (referred to as the "PCH Agreement"), which included a release provision (the "Release").[5] The PCH Agreement recites the following regarding Headington's understanding:

(a) each of W.I.R.C., LLC ("W.I.R.C.") and Dallas Petroleum Group LLC ("DPG") purports to own the oil, gas and minerals in and under the Loving County Tract;

(b) W.I.R.C. LLC has executed and delivered to Petro Canyon Energy LLC ("Petro Canyon") an oil, gas and mineral lease dated April 28, 2017, a memorandum of which is recorded as No. 2017-2126, in the records of such county, purporting to cover the Loving County Tract in its entirety (the "W.I.R.C. Lease"); and

(c) there is pending Cause No. 08-17-00017-CV, in the El Paso Eighth Court of Appeals of Texas, to determine the respective interests of W.I.RC., LLC and DPG in the Loving County Tract.

The Release provides:

HEP[6] waives, releases, acquits and discharges ***Petro Canyon and its*** *affiliates and their respective officers, directors, shareholders, employees, agents,* ***predecessors*** *and representatives for any liabilities, claims,* demands, causes of action or obligations, of whatever kind or character, including, without limitation, breach of contract, negligence, strict liability, indemnity or contribution that HEP has or may have in the future, whether asserted or unasserted, known or unknown, fixed or contingent, *related in any way to the Loving County Tract*; provided,

---

[5] Specifically, the parties in privity on the PCH Agreement are Headington Energy Partners LLC, Headington Royalty, Inc., and Petro Canyon Energy LLC.

[6] The PCH Agreement refers to Headington Energy Partners LLC and Headington Royalty, Inc. collectively as "HEP."

however, that the foregoing release shall not apply to any obligations arising under this agreement.

(emphasis added). No part of the PCH Agreement explicitly identifies, describes, or includes either Finley Resources, Inc. or Finley Production Co. L.P. Finley did not execute the PCH Agreement.

### E. Headington Files Suit Against Finley, and Petro Canyon Intervenes

On March 9, 2018, Headington filed this lawsuit against Finley. Stemming from the late notice allegation, Headington sought to recover damages allegedly caused by what Headington believes was a premature and unnecessary termination of its deep rights under the Arrington Lease. Finley answered and, in addition to a general denial, raised several affirmative defenses including release, waiver, and third-party beneficiary. Finley did not plead a request for declaratory judgment.

On July 5, 2018, Petro Canyon intervened, arguing the Release barred Headington's claims in the underlying lawsuit because (i) Finley had assigned its interest in the Arrington Lease to Petro Canyon, thereby making Finley Petro Canyon's "predecessor" to those lease rights; (ii) Headington knew Finley was Petro Canyon's "predecessor" to those lease rights; and (iii) Headington released Petro Canyon and its "predecessors" from all claims relating to the Loving County Tract in the PCH Agreement. Petro Canyon sought a declaratory judgment that Finley was a predecessor under the Release and that Headington's claims against Petro Canyon and Finley were barred pursuant to the Release.

## F. Competing Summary Judgments and Final Judgment

Headington, Finley, and Petro Canyon each filed traditional summary judgment motions. Headington sought a partial summary judgment determination against Finley and Petro Canyon's affirmative defenses of waiver and release. Based on the Release, Finley sought a traditional summary judgment as to all of Headington's claims and on its affirmative defenses of release, waiver, and third-party beneficiary. Petro Canyon sought a traditional summary judgment as to all of Headington's claims, on its affirmative defenses of release and waiver, and on its counterclaim for declaratory judgment.

After considering the competing summary judgment motions, the trial court entered an order on the parties' motions for summary judgment, as follows:

> The Court finds that the release is not ambiguous. The Court finds as a matter of law that the word "predecessor" as used in Paragraph VII of the release includes an entity that is a predecessor in title to the subject property interest.
>
> IT IS, THEREFORE, ORDERED that [Headington]'s motion for summary judgment should be, and it hereby is, DENIED.
>
> IT IS FURTHER ORDERED that the [appellees]' motion for summary judgment on the affirmative defenses of release and waiver are GRANTED, that the Court grants a declaratory judgment in favor of the [appellees] and that the [appellees] shall recover their reasonable and necessary attorney's fees.

On February 11, 2019, the trial court signed an according final judgment, which provides:

After having considered the respective motions, the Court denies [Headington]'s summary judgment motion. The Court further grants the summary judgment motions of [appellees] Finley Resources, Inc. and Finley Production Co., L.P., with the exception of their requests for attorney's fees. The Court further grants the summary judgment motion of the Third Party Defendant Petro Canyon Energy, LLC., with the exception of its request for attorney's fees, on its release and waiver defenses and its counter-claim for declaratory relief.

. . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant Petro Canyon is entitled to a declaratory judgment in its favor on its affirmative defenses of release and waiver but shall not recover its attorney's fees.

IT IS FURTHER ORDERED, ADJUDGED AND DECREE [sic] that the Defendants shall recover all of their court costs from the Plaintiffs, jointly and severally, with post judgment interest at the rate of 5%, compounded annually, from and after the date of this judgment until the date paid.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all relief not expressly granted herein is denied and that this judgment disposes of all claims and all parties and is an appealable final judgment.

This appeal followed.

## II.    ISSUES RAISED

Headington raises five issues on appeal, which include sub-issues, as follows:

1. Did the district court err by granting summary judgment to Finley and Petro Canyon on their release and waiver defenses, thereby holding that Finley was included within the definition of "predecessor" for purposes of this release? This issue raises the following sub-issues:

   a. Whether the term "predecessor" describes Finley with sufficient particularity to effect a valid release under Texas

law when Finley is not a party to, named in, or otherwise referenced in the release.

    b. Whether the district court erred by equating a reference to "Petro Canyon's . . . predecessor" with a "predecessor-in-interest" or "predecessor-in-title" regarding a specific asset or property.

    c. And even if the release covered a "predecessor-in-interest" or "predecessor-in-title," whether Finley qualifies under that definition.

2. Was Finley a third-party beneficiary of the release?

3. Should the district court have granted partial summary judgment in Headington's favor rejecting Finley's and Petro Canyon's affirmative defenses of waiver and release?

4. Did the district court err when it granted declaratory relief to Petro Canyon on the issues of release and waiver, which were already before the Court based on Finley's and Petro Canyon's defensive pleadings?

5. If, but only if, the Court finds that it may consider parol evidence when construing the release, did the district court abuse its discretion when sustaining objections to Headington's evidence?

## III.   STANDARD OF REVIEW

Because summary judgment is a question of law, a trial court's summary judgment decision is reviewed de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316–17 (Tex. 2019); *Flood v. Katz*, 294 S.W.3d 756, 761 (Tex. App.—Dallas 2009, pet. denied) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter

–10–

of law. *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015) (citing, inter alia, TEX. R. CIV. P. 166a(c)). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We credit evidence favorable to that party if reasonable jurors could, and we disregard contrary evidence unless reasonable jurors could not. *Id*. (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *SeaBright Ins. Co.*, 465 S.W.3d at 641–42 (citing *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)); *Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 261 (Tex. App.—Dallas 2014, pet. denied); *see also* TEX. R. APP. P. 43.3.

"When a trial court's order does not specify the grounds for its summary judgment, an appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *22 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op. on reh'g). However, when the trial court's summary judgment order does specify a ground on which it was granted, we generally limit our review to that

ground. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625-26 (Tex. 1996) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993)) (plurality opinion) (when the "trial court's order explicitly specifies the ground relied on for the summary judgment ruling . . . the summary judgment can only be affirmed if the theory relied on by the trial court is meritorious"); *Walters v. Livingston*, 519 S.W.3d 658, 664 (Tex. App.—Amarillo 2017, no pet.) (limiting consideration on appeal to two theories relied on by trial court in order).

## IV. DISCUSSION

Here, because the trial court's summary judgment order specified the ground on which it was granted—that Finley was a released party because the term "predecessor" in the Release includes an entity that was a "predecessor in title" to the subject property interest—we will limit our review to that theory. *See, e.g.*, *Stirrup v. Anschutz Tex., LP*, No. 05-17-00613-CV, 2018 WL 3616880, at *2 (Tex. App.—Dallas July 30, 2018, no pet.) (mem. op.) (limiting appellate review to grounds specified in summary judgment order where subsequent final judgment disposed of all claims but did not again specify grounds for decision); *see also Walters*, 519 S.W.3d at 664.

**Issue One: Did the district court err by granting summary judgment to Finley and Petro Canyon on their release and waiver defenses, thereby holding that Finley was included within the definition of "predecessor" for purposes of the Release?**

The dispositive question in this appeal is whether the word "predecessors" in the Release's phrase "[Headington] waives, releases, acquits and discharges Petro Canyon and its affiliates and their respective officers, directors, shareholders, employees, agents, ***predecessors*** and representatives for any liabilities, claims, . . . [and] causes of action . . . related in any way to the Loving County Tract" (emphasis added) refers to (i) Petro Canyon and its affiliates' corporate entities and agents ("Players") or (ii) prior parties in Petro Canyon's chain of title ("Spectators") that are otherwise unrelated to Petro Canyon. Headington proposes the former interpretation, and appellees propose the latter.

*i.     Release Generally*

A release surrenders legal rights or obligations between the parties pursuant to an agreement. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). A release operates to extinguish or forfeit a party's claim or claims as effectively as would a prior judgment between the parties and is a bar to any right of action on the released matter. *Id.* A release is an affirmative defense and, because it is also a contract, must be construed as such. *See* TEX. R. CIV. P. 94; *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) ("[A] release is a contract . . . "); *Stroop v.*

–13–

*N. Cty. Mut. Ins. Co.*, 133 S.W.3d 844, 851 (Tex. App.—Dallas 2004, pet. denied) ("Releases must be construed like other contracts.").

We construe a release in light of the facts and circumstances surrounding its execution. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991); *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 221 (Tex. 1991). We are further bound to a narrow construction of categorical releases. *Brady*, 811 S.W.2d at 938. When construing a contract, courts must give effect to the true intentions of the parties as expressed in the written instrument. *Coats v. Ruiz*, 198 S.W.3d 863, 879 (Tex. App.—Dallas 2006, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). When interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). In *Calpine Producer Services, L.P. v. Wiser Oil Company* we held:

> The court should consider that the "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." This is often referred to as the "Four Corners Rule" which means that the intention of the parties is to be ascertained from the instrument as a whole and not from isolated parts thereof. Moreover, a court will not change the contract merely because it or one of the parties comes to dislike its provisions or thinks that something else is needed. The court will not "ask about the subjective intent of the parties to the contract." When the contract is unambiguous, the court should apply the pertinent rules of construction, apply the plain meaning of the contract language, and enforce the contract as written.

169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.) (citations omitted). We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (citing *W. Reserve Life Ins. Co. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1953)).

ii.    *Ambiguity*

A contract is ambiguous if its meaning is uncertain or it is reasonably susceptible to more than one interpretation. *Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas 2014, no pet.) (citing *Coker*, 650 S.W.2d at 393).[7] A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). Here, the parties agree, and the trial court held, that the Release is unambiguous. The interpretation of an unambiguous contract is a question of law. *Jacobson v. DP Partners Ltd. P'ship*, 245 S.W.3d 102, 106 (Tex. App.—Dallas 2008, no pet.). If a contract is unambiguous, the parol evidence rule precludes consideration of evidence of prior or contemporaneous agreements unless an

---

[7] "An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

–15–

exception to the parol evidence rule applies. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008).[8]

### iii. Release Application

"In order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released. Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged." *Brady*, 811 S.W.2d at 938.

A release applies to a party that is either specifically identified in the release or described with sufficient particularity. *Schomburg v. TRW Vehicle Safety Sys., Inc.*, 242 S.W.3d 911, 913 (Tex. App.—Dallas 2008, pet. denied) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984)).[9] The specific identification requirement for a release is met if "a stranger could readily identify the released party." *Ambrosio v. EPS Wireless, Inc.*, No. 05-99-01442-CV, 2000 WL 1160696, at *3 (Tex. App.—Dallas Aug. 18, 2000, no pet.) (not designated for publication) (quoting *Duncan*, 665 S.W.2d at 420);[10] *accord McMillen v. Klingensmith*, 467

---

[8] "The parol evidence rule is not a rule of evidence at all, but a rule of substantive law. When parties have concluded a valid integrated agreement with respect to a particular subject matter, the rule precludes the enforcement of inconsistent prior or contemporaneous agreements." *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958) (citations omitted).

[9] "We hold that under Texas law, the mere naming of a general class of tortfeasors in a release does not discharge the liability of each member of that class. A tortfeasor can claim the protection of a release only if the release refers to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419–20 (Tex. 1984).

[10] Cases that are not designated for publication are merely persuasive and not precedential. TEX. R. APP. P. 47.7(b). ("(b) Civil Cases. Opinions and memorandum opinions designated 'do not publish' under

–16–

S.W.2d 193, 196 (Tex. 1971) ("The rule is a simple one. Unless a party is named in a release, he is not released. . . . We hold that a release of a party or parties named or otherwise specifically identified fully releases only the parties so named or identified, but no others.").

### iv.    Analysis

The "associated words canon" provides that associated words bear on one another's meaning. *See, e.g.*, *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750 n. 29 (Tex. 2006).[11] This "birds of a feather" construction rule means that words are known by the company they keep. *Id.* (applying the associated words canon to an insurance policy); *see also TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) (applying the associated words canon to statutory construction). Applying a narrow construction to the Release and term "predecessors" allows for only one logical reading: predecessors in this context refers solely to the entity-related "Players" and not the chain of title "Spectators." *See Brady*, 811 S.W.2d at 938.

Finley is not explicitly identified in any part of the PCH Agreement. Nevertheless, appellees focus on the word "predecessor" to show that Finley was

---

these rules by the courts of appeals prior to January 1, 2003 have no precedential value but may be cited with the notation, '(not designated for publication).'").

[11] This canon is sometimes referred to as "noscitur a sociis"— "a doctrine or rule of construction: the meaning of an unclear or ambiguous word (as in a statute or contract) should be determined by considering the words with which it is associated in the context." Noscitur a Sociis, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/legal/noscitur%20a%20sociis (last visited Nov. 18, 2020).

named with such descriptive particularity that the Release applies to it. *See generally Duncan*, 665 S.W.2d at 419–20. The PCH Agreement does not specifically define "predecessor." The ordinary meaning of "predecessor" is:

- "[s]omeone who precedes another, esp. in an office or a position," *Predecessor,* BLACK'S LAW DICTIONARY (10th ed. 2014);

- "ancestor," *Predecessor,* BLACK'S LAW DICTIONARY (10th ed. 2014);

- "one that precedes; esp.: a person who has previously occupied a position or office to which another has succeeded," *Predecessor*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002);

- "something that has been followed or displaced by another," *Predecessor*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002).

Using a categorical list, the Release includes "Petro Canyon and its affiliates and their respective *officers, directors, shareholders, employees, agents,* **predecessors**, *and representatives* . . . ." (Emphasis added). Therefore, "predecessors" is in a string of entity-related groups ("Players"), not chain of title-related owners of the real property interest ("Spectators"). Excluding "predecessor," each of those other terms in the Release relate as "birds of a feather" to the corporate composition or structure of Petro Canyon and its affiliates. The placement of the term "predecessors" along with its ordinary meaning gives the term a certain legal meaning. *See Grain Dealers Mut. Ins. Co.*, 943 S.W.2d at 458. Under a narrow, contextual reading of the Release, the term "predecessors" unambiguously describes

–18–

predecessors within the corporate composition or structure of Petro Canyon and its affiliates—(i) prior forms of the business entities and (ii) individuals who may no longer serve Petro Canyon and its affiliates but previously served in the capacity of an officer, director, shareholder, employee, agent, or representative.[12] This "corporate predecessor" interpretation is further reasonable because "predecessor" is the *only* term that clarifies the Release's application to explicitly include *former* corporate business entities, officers, directors, shareholders, employees, agents, and representatives.[13] In other words, the Release applies to "Players" for Petro Canyon. We therefore agree with the trial court that the PCH Agreement and its Release language is unambiguous, and we do not consider any parol evidence.

The evidence shows that Finley was not a corporate predecessor of Petro Canyon, and Finley does not fit within any other Release term category. The Release does not otherwise identify Finley in such a manner that a stranger could readily identify Finley as a released "predecessor." *See Duncan*, 665 S.W.2d at 420; *Ambrosio*, 2000 WL 1160696, at *3; *McMillen*, 467 S.W.2d at 196. There is no language in the PCH Agreement that suggests the term "predecessor" is used in a

---

[12] Texas courts routinely use the term "corporate predecessor" to include the previous business organization forms of a business entity—business entities that are now no longer in existence and whose rights have been vested in their successors. *See, e.g.*, *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 895 (Tex. 2018) (discussing Bentley Premier Builders, LLC as a corporate predecessor of Starside Custom Builders, LLC following bankruptcy); *Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750, 774 (Tex. App.—Houston [1st Dist.] 2012), *aff'd*, 432 S.W.3d 885 (Tex. 2014) (extending liability to the purchaser of a facility as the successor "business entity" to the seller.).

[13] The PCH Agreement contains no definitive description of Headington or Petro Canyon.

technical or different sense. *See NationsBank*, 939 S.W.2d. at 121. Finley played no role in and is absent from the PCH Agreement. Finley stands as a "Spectator" outside of the PCH Agreement.

> The Dissent confers "predecessor" status to Finley as follows:

> [The Release] expressly lists Petro Canyon and *its* predecessors as released parties. I would conclude that the Release's reference to the predecessors of Petro Canyon is sufficient to identify Finley because Finley's identity and its connection with the activity for which Petro Canyon signed this Release—the transfer of mineral interests in the Loving County Tract—are not in doubt.

(emphasis in original). Such a reading is impermissible under Texas law. *See Brady*, 811 S.W.2d at 938. The PCH Agreement contains neither (i) information about Finley and "its connection with the activity for which Petro Canyon signed the Release" nor (ii) identification or description of Petro Canyon's "predecessors" beyond the sole term "predecessor." Without further descriptive particularity, a stranger could not readily identify Finley as a "predecessor" of Petro Canyon. *See Duncan*, 665 S.W.2d at 420; *Ambrosio*, 2000 WL 1160696, at *3; *McMillen*, 467 S.W.2d at 196.

The Dissent and appellees ask us to contort "predecessor" to mean something entirely unrelated to the other terms in the list in which it appears. They suggest we expand our reading of "predecessor" to include a "predecessor-in-title"—a term which is completely absent from the PCH Agreement. The Dissent arrives at this expanded reading of "predecessor" after considering parol evidence surrounding the

PCH Agreement's execution. This expansion of "predecessor" to mean "predecessor-in-title" impermissibly rewrites the PCH Agreement. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language.").[14]

Nevertheless, the Texas Supreme Court has held:

> The parol evidence rule does not, however, prohibit courts from considering extrinsic evidence of the facts and circumstances surrounding the contract's execution as "an aid in the construction of the contract's language," but the evidence may only "give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to 'interpret' contractual terms." This is true even if doing so reveals a latent ambiguity in a contract's terms. *But whether a court is considering if an ambiguity exists or construing the terms of an unambiguous contract, surrounding facts and circumstances can only provide context that elucidates the meaning of the words employed, and nothing else. As we have often stated in one way or another, "[u]nderstanding the context in which an agreement was made is essential in determining the parties' intent as expressed in the agreement, but it is the parties' expressed intent that the court must determine."*

*URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 765 (Tex. 2018) (citations omitted, emphasis added). The Dissent and appellees ask us to construe the language of the contract in a manner that favors forfeiture of claims. "Courts will not declare a forfeiture unless they are compelled to do so by language which can be construed in

---

[14] The Dissent cites *Othen v. Rosier*, 226 S.W.2d 622, 625, 628 (Tex. 1950), to support the statement that the terms "predecessor" and "predecessor-in-title" are used interchangeably when discussing real property ownership, titleship, and mineral interests. However, *Othen* is an inapt comparison because the *Othen* court was not interpreting any contract but, rather, adjudicating a dispute over an easement and prescriptive right. *Othen*, 226 S.W.2d at 626.

no other way." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987) (citing *Auto. Ins. Co. v. Teague*, 37 S.W.2d 151, 153 (Tex. Comm'n App. 1931)).[15] Still, the Dissent and appellees cite prior cases from our Court to support their expansion of the term "predecessor" into "predecessor-in-title," which we distinguish below.

1) Chang v. N. Tex. Mesbic, Inc.

In *Chang v. North Texas Mesbic, Inc.*, Raymond Chang ("Chang") sued North Texas Mesbic, Inc. ("Mesbic") for damages allegedly caused by Mesbic's fraud relating to a note. No. 05-99-01228-CV, 2000 WL 1048534, at *1 (Tex. App.—Dallas July 31, 2000, pet. denied) (not designated for publication). Prior to Chang's suit against Mesbic, Mesbic assigned a note ("Note") to Formosa Foods, Inc. ("Formosa"). *Id.* Formosa had previously sued Chang on the Note. *Id.* To resolve this prior suit, Formosa and Chang entered into a Compromise Settlement Agreement and Mutual Release of All Claims ("Note Settlement"), releasing all claims between the parties arising from and related to the Note. *Id.* The Note Settlement released the parties' "*predecessors* . . . and all *those in privity*[16] with each

---

[15] "[T]he courts will not declare a forfeiture, unless they are compelled to do so, by language which will admit of but *one construction, and that construction is such as compels a forfeiture*." *Auto. Ins. Co. v. Teague*, 37 S.W.2d 151, 153 (Tex. Comm'n App. 1931) (emphasis added).

[16] "Privity" refers to a "mutuality of interest." *Privity*, BLACK'S LAW DICTIONARY, (10th ed. 2014). Therefore, the Note Settlement release clause (i) did not limit the application of the release to those with a corporate relationship with the parties and (ii) included explicit language that included unrelated parties who had the same interest(s) in the subject matter of the release.

of the said persons and entities. *Id*. at *3 (emphasis in original) (footnote added).[17]

Mesbic was not a party to the litigation between Formosa and Chang, and Mesbic did not execute the Note Settlement. *Id.* at *2. Chang appealed to our Court after the trial court entered a summary judgment in favor of Mesbic. *Id.* In interpreting the Note Settlement, we concluded that "as Formosa's *predecessor in interest* and *privy as to the Note*, Mesbic is a third–party beneficiary of the settlement agreement, and Chang's claims against Mesbic regarding the Note were released." *Id*. at *2–4 (emphasis added). Put another way, Mesbic was a "Player" since it was previously in privity on the same Note.

The Dissent extends this holding to mean that a "predecessor-in-interest" is included within the term "predecessor." However, in *Chang* we did not construe the term "predecessor" in a vacuum; we addressed the term "predecessor" in the context of a claim to third-party beneficiary status under the Note Settlement, and we concluded the agreement was an "accord and satisfaction" of any claim on the Note. *See id.* at *4.[18] Unlike in *Chang*, the PCH Agreement is a new lease between parties, not a settlement agreement that reaches back to resolve a dispute from a prior agreement. Thus, we decline to extend our holding in *Chang* regarding "predecessors" to the facts and circumstances of our instant case.

---

[17] In *Chang*, "predecessors . . . and those in privity" were not only "released parties" but also "releasing parties" in the context of those mutual releases. *See id*.

[18] One effect of this extension of the release to Mesbic was the preclusion of a double recovery. *See id*.

–23–

2) Schomburg v. TRW Vehicle Safety Sys., Inc.

In *Schomburg v. TRW Vehicle Safety Systems, Inc.*, the Schomburgs entered a settlement agreement with General Motors Corporation after a suit involving products liability and negligence ("GMC Settlement"). 242 S.W.3d at 913. The GMC Settlement included a release that defined the released parties as "General Motors Corporation, its related and affiliated companies or corporations, agents, servants, authorized dealers, *component suppliers*, . . . ." *Id.* at 914 (emphasis added). The release provided that it applied to all claims of the Schomburgs that arose from or related to the accident on November 17, 2003. *Id.* After executing the GMC Settlement, the Schomburgs sued TRW, the seatbelt manufacturer, and TRW obtained summary judgment on the affirmative defense of release. *Id.* Following the Schomburgs' appeal, we held that the use of the term "component suppliers" in the release of General Motors Corporation was sufficiently specific to release TRW. *Id.* at 914–15.

In discussing how the Release in the instant case differs from the *Duncan* release, the Dissent refers to our holding in *Schomburg* to argue that "predecessor" is sufficiently specific to describe Finley—that TRW in *Schomburg* was as readily

identifiable as Finley in the instant case.[19] However, unlike the instant case, the GMC Settlement in *Schomburg* provided additional context and particularity in describing the categories of released parties, "identif[ying] the accident by date, location, and the vehicle identification number of the Schomburgs' vehicle." *Id.* at 911, 915. In contrast, the PCH Agreement does not contain such descriptive particularity such that a stranger could readily identify Finley as a released party. *See id.*; *see also Quiroz v. Jumpstreet8, Inc.*, No. 05-17-00948-CV, 2018 WL 3342695, at *3 (Tex. App.—Dallas July 9, 2018, pet. denied) (mem. op.) (holding the release at issue "clearly and unambiguously stated it applied to all Jumpstreet entities that are engaged in the trampoline business"; therefore naming the released party with descriptive particularity).

Because we conclude that the PCH Agreement fails to include Finley as a party affected by the Release, we further conclude that the trial court erred in granting summary judgment to Finley and Petro Canyon on their release and waiver defenses, respectively. We sustain Headington's first issue.

**Issue Two: Was Finley a third-party beneficiary of the release?**

---

[19] *See generally Duncan*, 665 S.W.2d at 419−20 (holding that specific identification is not met unless the reference in the release is so particular that a stranger could readily identify the released party and that "[s]ince the reference to 'all corporations' does not supply the descriptive particularity necessary to specifically identify Cessna, the release does not bar Duncan's action if Texas law applies to its construction.")

Although the trial court makes no explicit determination that Finley was a third-party beneficiary of the Release, the trial court's final judgment grants Finley's summary judgment motion—only excepting its summary judgment request for attorney's fees. Since Finley's summary judgment motion sought, in part, a determination that it was a third-party beneficiary of the Release, the trial court impliedly determined that Finley was a third-party beneficiary of the Release.

Appellees argue that Finley is a third-party beneficiary of the PCH Agreement. Appellees rely on the same argument that the term "predecessors" in the Release includes Finley, which we have rejected above. Appellants argue Finley is not a third-party beneficiary of the release.

As a general rule, the benefits and burdens of a contract belong solely to the contract parties. *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). However, an exception to this rule is whenever a party qualifies as a third-party beneficiary. *Id*. "To create a third-party beneficiary, the contracting parties must have intended to grant the third-party the right to be a 'claimant' in the event of a breach." *Id*. The Texas Supreme Court provides:

> To determine whether the contracting parties intended to directly benefit a third-party and entered into the contract for that purpose, courts must look solely to the contract's language, construed as a whole. The contract must include "a clear and unequivocal expression of the contracting parties' intent to directly benefit a third-party," and any implied intent to create a third-party beneficiary is insufficient. Courts may not presume the necessary intent. To the contrary, "we must begin with the presumption" that the parties contracted solely "for themselves," and only a clear expression of the intent to create a third-

–26–

party beneficiary can overcome that presumption. If the contract's language leaves any doubt about the parties' intent, those "doubts must be resolved against conferring third-party beneficiary status."

*Id.* at 102–03. (internal citations and quotations omitted). Here, the PCH Agreement contains no clear or unequivocal expression of the contracting parties' intent to directly benefit Finley. Finley is completely absent from the PCH Agreement language, and, as we have concluded above, no terms of the contract pull Finley into the "Players" of the PCH Agreement. Any interpretation that the PCH Agreement was entered to benefit Finley as a third-party beneficiary would require us to improperly imply an intent from the parties that is absent from the contract's language. *See id.* Instead, we must resolve any doubt that Finley could potentially be a third-party beneficiary of the PCH Agreement *against* conferring third-party beneficiary status to Finley. *See id.*

Nonetheless, appellees rely on *Pratt-Shaw v. Pilgrim's Pride Corp.* to argue that Finley is a third-party beneficiary of the Release. 122 S.W.3d 825, 830 (Tex. App.—Dallas 2003, pet. denied). We disagree that our holding in *Pratt-Shaw* can be extended to the facts and circumstances of the instant case. In *Pratt-Shaw*, Pilgrim's Pride Corporation was the client of B & C Concrete, Inc. ("B & C"). *Id.* at 827. An employee died as a result of injuries he received while working for B & C on Pilgrim's Pride Corporation's premises. *Id.* The employee's estate sued Pilgrim's Pride Corporation, which argued that the action was barred by waiver and release.

*Id*. at 827–28. Pilgrim's Pride Corporation argued it was released from liability as a "client" of B & C when the employee agreed in his welfare benefit plan

> *to accept [B & C's] as the only benefits [he was] entitled to receive in the event of a work-related injury and to waive any and all other causes of action, claims, rights, and demands that you could make against the Company, its successors, assigns, employees, officers, directors, shareholders, agents and clients.*

*Id*. at 830 (emphasis added). We concluded

> that the listing of the entities within the language of the waiver reveals the parties' intent that the waiver provision extends to all of those entities. The waiver plainly extends to "clients."

*Id*. We further concluded that the plain meaning of "clients" included Pilgrim's Pride Corporation as a third-party beneficiary of the waiver agreement because (i) in the dictionary, "'Client' is defined as 'a person who engages the professional advice or services of another,' or as a 'patron or customer'" and (ii) "[i]t is clear by inclusion of both 'agents' and 'clients' in the list of those subject to the waiver, that each term is intended to encompass *different categories of persons*." *Id*. at 833 (emphasis added).[20]

Unlike the circumstances in *Pratt-Shaw*, the evidence from the instant case shows (i) no language or term in the contract unequivocally referring to Finley and (ii) the term "predecessor" could not extend to include Finley since the remaining terms in the PCH Agreement's categories of persons—respective officers, directors,

---

[20] Unlike the instant case, the categorical release terms in *Pratt-Shaw* do not appear to be "birds of a feather." *See Pratt-Shaw*, 122 S.W.3d at 830.

shareholders, employees, agents, and representatives—show intent to encompass only a single category of persons: entity-related "Players" of Petro Canyon. For those reasons, we conclude that the trial court erred in its implied determination that Finley was a third-party beneficiary of the Release. We must conclude, as a matter of law, that Finley was not a third-party beneficiary of the PCH Agreement. We sustain Headington's second issue.

**Issue Three: Should the district court have granted partial summary judgment in Headington's favor, rejecting Finley's and Petro Canyon's affirmative defenses of waiver and release?**

Headington argues that appellees' release and waiver defenses fail as a matter of law. Appellees—asserting that Finley was a "predecessor" of Petro Canyon— argue that Headington waived its "claims against [Finley] . . . relating to the Loving County Tract" when Headington executed the Release. Appellees argue that Headington "expressly" waived its claims, that "a party's express renunciation of a known right can establish waiver." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Appellees do not otherwise distinguish their briefing of waiver from their briefing on release.

In light of our conclusions that (i) Finley was not a predecessor of Petro Canyon and (ii) the Release does not apply to Finley, we reject appellees' assertion that Headington "expressly" waived any claims as to Finley. To the contrary, no express language in the PCH Agreement refers to Finley. Therefore, Headington could not have "expressly" waived its claims against Finley in the PCH Agreement.

–29–

*See id.* at 643. Consequently, the trial court erred when it denied Headington's motion for summary judgment against appellees' affirmative defenses of waiver and release. We conclude, as a matter of law, that Headington did not waive or release its claims as to Finley. We sustain Headington's third issue.

**Issue Four: Did the district court err when it granted declaratory relief to Petro Canyon on the issues of release and waiver, which were already before the Court based on Finley's and Petro Canyon's defensive pleadings?**

Headington argues that the trial court erred in (i) granting declaratory judgment in favor of appellees in the summary judgment order and (ii) granting declaratory judgment in favor of Petro Canyon in the final judgment. A counterclaim for declaratory judgment is improper if it is nothing more than a mere denial of the plaintiff's claims, and the counterclaim fails to have greater ramifications than the original suit. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990) (orig. proceeding). "To have 'greater ramifications' than the original suit, the counterclaim should seek some sort of affirmative relief." *Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 524 (Tex. App.—Dallas 2010, no pet.). "To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." *Gen. Land Office of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990) (quoting *Weaver v. Jock*, 717 S.W.2d 654, 657 (Tex. App.—Waco 1986, writ ref'd n.r.e.)).

Here, Petro Canyon's request for declaratory judgment is as follows:

An actual controversy exists between Petro Canyon and Headington regarding the proper construction of the PCH Agreement, and in particular the effect of the use of the term "predecessors" in the release provision in favor of Petro Canyon.

Therefore, Petro Canyon seeks a declaratory judgment under the Texas Uniform Declaratory Judgment Act declaring that (a) Finley Resources, Inc., and Finley Production Co. L.P. are "predecessors" of Petro Canyon or its affiliates as contemplated by the release; (b) that the release, by waiving and releasing all claims "related in any way to the Loving County Tract" released all of Headington's claims against Finley Resources, Inc., and Finley Production Co. L.P. at issue in this litigation; (c) that Headington cannot pursue claims it has agreed in contract to release and that judgment must therefore be rendered for Petro Canyon and Finley on their defenses of release; and (d) that Petro Canyon should be awarded costs and reasonable and necessary attorney fees as the prevailing party in a declaratory judgment action.

Petro Canyon's request for declaratory judgment did not relieve it of its burden to comply with the requirement to assert a claim for affirmative relief. *See BHP Petroleum*, 800 S.W.2d at 841 n. 8. Petro Canyon argues that its request for declaratory judgment has "greater ramifications" than the original suit.[21]

The record shows the matters on which Petro Canyon sought a declaratory judgment were nothing more than affirmative defenses to claims on which the parties

---

[21] The Dissent takes the position that "[t]he declaratory judgment determining that the term 'predecessors' includes 'predecessors-in-title' as to the subject property efficiently and effectively addresses an issue that could be raised in future litigation related to those other potential parties." However, Petro Canyon's request for declaratory judgment does *not* request a determination for "predecessors" to include "predecessors-in-title" or otherwise define "predecessors." Petro Canyon's request for declaratory judgment relates to Finley and its status as a predecessor under the Release, which mirrors Petro Canyon's and Finley's affirmative defenses.

had already joined issue and have no greater ramification than the defenses that were presented when Petro Canyon's counterclaim for declaratory action was filed. Instead, Petro Canyon sought its declaratory action solely to avoid the liability pled by plaintiffs. The record shows that Petro Canyon's request for declaratory judgment is nearly identical to and duplicative of its affirmative defenses.[22] The allegations pled in Petro Canyon's counterclaim are not factual allegations upon which affirmative relief could be granted. *See Crews v. Dkasi Corp.*, 469 S.W.3d 194, 204 (Tex. App.—Dallas 2015, pet. denied) ("Artful pleading to present affirmative defenses in the form of a declaratory judgment counterclaim is not sufficient to state a claim for affirmative relief.").[23] We therefore conclude that Petro Canyon asked for no greater relief in its declaratory judgment counterclaim than it asked for without its counterclaim. *See id.*[24] We conclude that Petro Canyon's request for declaratory judgment was improper. *See BHP Petroleum*, 800 S.W.2d at 842. Consequently, the trial court erred in granting declaratory judgment in favor of Petro Canyon.

---

[22] Petro Canyon concedes in its motion for summary judgment that the argument regarding its declaratory judgment action is "based on the [same] facts and law" as its release and waiver affirmative defenses.

[23] We are wary and recognize "that a counterclaim under the Declaratory Judgment Act, presenting no new controversies but brought solely to pave an avenue to attorney fees" is not proper. *John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 594–95 (Tex. App.—Dallas 1988, writ denied) (referencing *Narisi v. Legend Diversified Invs.*, 715 S.W.2d 49, 51 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)

[24] *See also HECI Expl. Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 639 (Tex. App.—Austin 1992, writ denied) (holding that a party "asked for no greater relief in its declaratory-judgment counterclaim than it asked for without that counterclaim" when the party requested declaratory judgment that was identical to its affirmative defenses).

The record shows that Finley made no independent pleading or request for any declaratory judgment. Instead, Finley joined Petro Canyon's summary judgment request for declaratory judgment. "A party may not be granted relief in the absence of pleadings to support that relief." *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) (citing *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979); TEX. R. CIV. P. 301). Since Finley has no pleadings requesting declaratory judgment, we conclude that the trial court erred in granting declaratory judgment in favor of Finley. We sustain Headington's fourth issue.

**Issue Five: If, but only if, the Court finds that it may consider parol evidence when construing the release, did the district court abuse its discretion when sustaining objections to Headington's evidence?**

We do not consider parol evidence in our opinion. Accordingly, we do not reach Headington's fifth issue. *See* TEX. R. APP. P. 47.1.

## V.    DISSENT ACKNOWLEDGMENT

The Dissent's construction of the Release is not unreasonable; however, it is an impermissibly broad construction. Undeniably, the events outside the four corners of the contract that are discussed by the Dissent are noteworthy and may reveal the subjective intent of the parties. Yet, absent contract ambiguity, we are prohibited from asking about the subjective intent of the parties to the contract. *See Matagorda Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) ("In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." (citing *City of Pinehurst v. Spooner*

*Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968))). We are bound to the intent of the parties as drafted in the agreement. *URI, Inc.*, 543 S.W.3d at 763.[25] Here, we must narrowly construe the term "predecessors" in the PCH Agreement in a way that avoids forfeiture—that construction being "predecessors" refers to entity-related groups ("Players" in the contract) and not title-related owners of the real property interest ("Spectators" outside of the contract).

## VI. CONCLUSION

Having sustained Headington's first four issues, we first reverse the trial court's judgment denying Headington's motion for summary judgment on waiver and release and, therefore, render partial summary judgment in favor of Headington; we (i) dismiss Finley's and Petro Canyon's affirmative defenses of waiver and release and (ii) dismiss Petro Canyon's declaratory judgment counterclaim. Second, we reverse the trial court's judgment granting Finley's and Petro Canyon's motions for summary judgment on the affirmative defenses of waiver and release. Third, we reverse the trial court's judgment determining Finley was a third-party beneficiary of the PCH Agreement. Fourth, we reverse the trial court's declaratory judgment. Fifth, to the extent the trial court awarded attorney's fees and court costs, we reverse the trial court's judgment that Finley and Petro Canyon recover reasonable and

---

[25] "When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *URI, Inc.*, 543 S.W.3d at 763.

necessary attorney's fees and court costs from Headington. Sixth, we remand this case to the trial court for further proceedings consistent with this opinion.

 

 

Bill Pedersen, III
_____
190291f.p05

BILL PEDERSEN, III
JUSTICE


## JUDGMENT

HEADINGTON ROYALTY, INC.
AND HEADINGTON ENERGY
PARTNERS, LLC, Appellants

No. 05-19-00291-CV      V.

FINLEY RESOURCES, INC.,
FINLEY PRODUCTION CO. L.P.
AND PETRO CANYON ENERGY,
LLC, Appellees

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-01160-
2018.
Opinion delivered by Justice
Pedersen, III. Justice Osborne
participating. Dissenting opinion
delivered by Justice Partida-Kipness.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED.**

Headington Royalty, Inc. and Headington Energy Partners, LLC are collectively referred to as "Headington," herein. Finley Resources, Inc. and Finley Production Co., L.P. are collectively referred to as "Finley," herein. Petro Canyon Energy, LLC is referred to as "Petro Canyon," herein.

We first **reverse** the trial court's judgment denying Headington's motion for summary judgment on waiver and release and, therefore, render partial summary judgment in favor of Headington; we (i) **dismiss** Finley's and Petro Canyon's affirmative defenses of waiver and release and (ii) **dismiss** Petro Canyon's declaratory judgment counterclaim. Second, we **reverse** the trial court's judgment granting Finley's and Petro Canyon's motions for summary judgment on the affirmative defenses of waiver and release. Third, we **reverse** the trial court's judgment determining Finley was a third-party beneficiary of the PCH Agreement. Fourth, we **reverse** the trial court's declaratory judgment. Fifth, to the extent the trial court awarded attorney's fees and court costs, we **reverse** the trial court's judgment that Finley and Petro Canyon recover reasonable and necessary attorney's fees and

court costs from Headington. Sixth, we **REMAND** this case to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants HEADINGTON ROYALTY, INC. AND HEADINGTON ENERGY PARTNERS, LLC recover their costs of this appeal from appellees FINLEY RESOURCES, INC., FINLEY PRODUCTION CO. L.P. AND PETRO CANYON ENERGY, LLC.

Judgment entered this 18th day of March, 2021.